IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| COLLISION COMMUNICATIONS, INC., § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CASE NO. 2:23-CV-00587-JRG |
| § | |
| SAMSUNG ELECTRONICS CO., LTD. and § | |
| SAMSUNG ELECTRONICS AMERICA, § | |
| INC., § | |
| § | |
| *Defendants*. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion for Leave to Supplement the Expert Report of Dr. Kowalski (the "Motion") filed by Plaintiff Collision Communications, Inc. ("Plaintiff"). (Dkt. No. 280.) In the Motion, Plaintiff moves for leave to supplement the infringement reports of its technical expert, Dr. Kowalski, in light of the Court's Supplemental Claim Construction Order (the "Supplemental Order") (Dkt. No. 269). (Dkt. No. 280.) Having considered the Motion and its related briefing, and for the reasons stated herein, the Court finds that it should be **GRANTED**.

I.   BACKGROUND

Plaintiff alleges that Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. ("Defendants") infringe certain claims from U.S. Patent No. 7,463,703 and U.S. Patent No. 7,920,651 (the "Asserted Patents") along with claims from two (2) other patents. (Dkt. No. 269 at 1.) The Asserted Patents have the same disclosure and are directed to "increasing capacity [in co-channel communications] by allowing interfering channels." (*Id*. at 1–2.)

The asserted claims of the Asserted Patents recite a limitation, "multiple users," that has been the subject of much debate during claim construction proceedings. (*Id*. at 1.) The Court

initially construed "multiple users" to mean "sources emanating from devices." (Dkt. No. 171 at 26.) However, after Plaintiff moved for the Court to clarify its construction, the Court issued the Supplemental Order on August 26, 2025. (Dkt. No. 202; Dkt. No. 269.) The Supplemental Order construes "multiple users" as "multiple sources of digital data streams for transmission." (*Id*. at 14.) The Court also noted that the supplemental construction "is close to" Plaintiff's proposed construction of the term (multiple sources of digital data streams) "but clarifies the . . . generated data stream must be provided for transmission over the communications medium." (*Id*. at 12.)

## II. LEGAL STANDARD

To determine whether a party may supplement an expert report after the close of expert discovery, the Court considers four (4) factors: "(1) the explanation, if any, for the party's failure to comply with the discovery order; (2) the prejudice to the opposing party of allowing the witness[] to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the witness[]' testimony." *Image Processing Techs., LLC v. Samsung Elecs. Co., Ltd.*, No. 2:20-cv-00050-JRG-RSP, 2020 WL 2395928, at *2 (E.D. Tex. May 12, 2020) (quoting *Raytheon Co. v. Indigo Sys. Corp.*, No. 4:07-cv-109, 2009 WL 413081, at *1–2 (E.D. Tex. Feb. 18, 2009)).

## III. ANALYSIS

The parties dispute (a) whether the Supplemental Report advances a new infringement analysis for "multiple users"; (b) whether that infringement analysis violates the Court's Supplemental Order; and (c) whether the report invokes an undisclosed standard essential patent ("SEP") theory of infringement. The Court addresses each in turn before discussing (d) whether good for the requested leave exists.

### A. Whether the Supplemental Report discloses a new infringement theory for "multiple users"?

Plaintiff argues that the Supplemental Report has not advanced a new infringement theory. (Dkt. No. 280 at 10.) Specifically, Plaintiff asserts that both the Opening and Supplemental Reports map "multiple users" to multiple MIMO layers. (*Id*. at 10–12.) As support, Plaintiff points to the Opening Report which defines a "spatial layer" as "one of the different streams generated by spatial multiplexing" and illustrates these layers undergoing processing for transmission. (*Id*. at 11 (citing Dkt. No. 280-7 ¶¶ 26, 29).) Plaintiff further contends that Dr. Kowalski explained that these layers are "users" by stating: "a device employing 2x2 SU-MIMO receives a digital data stream *from* two users and a device employing 4X4 SU-MIMO receives a digital data stream *from* four users." (*Id*. (citing Dkt. No. 280-8 ¶ 8) (emphasis added).)

Defendants argue in response that the Supplemental Report's infringement theory as to MIMO layers is new. (Dkt. No. 282 at 7.) Defendants maintain that, whereas the Opening Report maps "multiple users" to signals that have already been transmitted by antennas, the Supplemental Report maps the limitation to MIMO signals/layers in the processing chain that have not been transmitted. (*Id*. at 7–8 (citing Dkt. No. 280-8 ¶ 8); *see also* Dkt. No. 284 at 4.) As support, Defendants insist that the Opening Report mentions "layers" in only "a handful of block quotes" that are not Dr. Kowalski's affirmative opinions. (Dkt. No. 282 at 9 (citing Dkt. No. 280-7 ¶ 29).) Defendants further point to Dr. Kowalski's testimony, insisting that he provides that "sources" precede "layers." (*Id*. at 5 (citing Dkt. No. 133-2 at 182:16–183:21 ("the source of the data . . . whatever its origin is [] broken up into one or more data streams that are processed on different layers").) According to Defendants, "layers were never a basis for Dr. Kowalski's infringement analysis." (*Id*. at 8.)

The Court agrees with Plaintiff. The Supplemental Report identifies multiple MIMO signals/layers as "multiple sources of digital data streams for transmission" because "the

3

transmitter processes and transmits MIMO signs/layers within the over-the-air SU-MIMO signal." (Dkt. No. 280-2 ¶ 5.) Consistent with this, the Opening Report makes clear that a "spatial layer is . . . one of the different streams generated by spatial multiplexing" and depicts the layers as being transmitted. (Dkt. No. 280-7 ¶¶ 26, 29; *see also* Dkt. No. 280-8 ¶ 11 ("The Accused Products with LTE capabilities process digital data streams from multiple sources of digital data streams, such as when receiving 2x2 and 4x4 single-user MIMO (SU-MIMO) signals").)

Accordingly, the Court finds that the Supplemental Report has not introduced a new infringement theory.

### B. Whether the Supplemental Report violates the Court's Supplemental Order?

Defendants argue that the Supplemental Report violates the Court's Supplemental Order. (Dkt. No. 282 at 4.) Specifically, Defendants insist that the Court has identified a "user" as $d_k$ in the below figure, but the Supplemental Report maps a user to a "layer" ($b_k$). (*Id*. at 11 (citing Dkt. No. 269 at 13.)



FIG. 1 of the patents modified to show a single "user" or source of a digital data stream d(1) ultimately provided to two different antennas

As support, Defendants note that the Asserted Patents define $b_k$ as "mapped symbols." (*Id*. at 4 (citing Dkt. No. 1-1 at 14:18–21).) According to Defendants, the layers are "mapped symbols" ($b_k$) as Dr. Kowalski recognized that "a layer can be described as a mapping of symbols onto the transmit antenna ports." (*Id*. (citing Dkt. No. 280-7 ¶ 29).)

4

Plaintiff argues in reply that the Supplemental Report is consistent with the Court's Supplemental Order. (Dkt. No. 283 at 3–4.) As support, Plaintiff points out that the Court's construction of "multiple users" in the Supplemental Order "is close to" Plaintiff's proposed construction, which Dr. Kowalski undisputedly applied. (*Id*. at 4.) Plaintiff also contends that, contrary to Defendants, the Court has not held that a "user" is tied to a particular box or arrow in the above figure. (*Id*.)

Defendants' arguments fall flat. As an initial matter, Defendants overstate the importance of the above figure. The Supplemental Order uses the illustration only as an example to "help clarify the effect of [the Court's] construction." (Dkt. No. 269 at 12.) Indeed, the Court construed "multiple users" to mean "multiple sources of digital data streams for transmission," not $d_k$. (*Id*. at 14.) Additionally, the Supplemental Report is in line with the Court's construction of "multiple users." Specifically, the Supplemental Report provides that "MIMO signals/layers in the processing chain serve as sources of digital data streams for transmission, where the transmitter processes and transmits MIMO signals/layers within the over-the-air SU-MIMO signal." (Dkt. No. 280-2 ¶ 5.)

Accordingly, the Court finds that the Supplemental Report is not inconsistent with the Supplemental Order.

### C. Whether the Supplemental Report invites a new SEP Infringement Theory?

In their response, Defendants object to ¶¶ 3–4 of the Supplemental Report for citing only to paragraphs in the Opening Report that describe the 5G and LTE standards. (Dkt. No. 282 at 6.) According to Defendants, these paragraphs provide that "practicing the LTE and/or 5G standards is enough to infringe." (*Id*.) However, Plaintiff has repeatedly assured Defendants that "this was not an SEP case." (*Id*. at 5 (citing Dkt. No. 165-11 at 20).)

5

Plaintiff maintains that the Supplemental Report has not invited a new SEP infringement theory. (Dkt. No. 283 at 5.) As support, Plaintiff defends the report's citations to documents that discuss 5G and LTE standards, noting that "citing standards material for a particular limitation amongst other infringement evidence is far from asserting essentiality." (*Id*.)

Again, the Court agrees with Plaintiff. "A plaintiff need not always show that a ***claim*** covers all devices practicing the standard to rely on the standard for infringement purposes." *Constellation Designs, LLC v. LG ELECTRONICS, INC. et al*, No. 2:21-cv-00448-JRG, Dkt. No. 366, slip. op. at 3 (E.D. Tex. Apr. 23, 2024) (emphasis in original).

Accordingly, the Court finds that Plaintiff has not invited a SEP theory of infringement.

### D. Whether good cause for the requested leave exists?

In light of the Court's above findings, each of the four good cause factors weighs in favor of granting leave. First, Plaintiff could not have addressed the "for transmission" language in the Court's Supplemental Order until the Court issued it. Second, Dr. Kowalski's Supplemental Report is important. Plaintiff could not address the Court's full interpretation of "multiple users" without the report. Third, the report would not significantly prejudice Defendants. As discussed above, Dr. Kowalski has not introduced a new infringement theory. Finally, a continuance is unnecessary. Plaintiffs have not pulled a "surprise switcheroo" that is forbidden under Fifth Circuit precedent. *Onosode v. Equifax Info. Servs.*, 2023 WL 2783263, at *14 (E.D. Tex. Mar. 29, 2023).

Accordingly, the Court finds that good cause for the requested leave exists.

### IV. CONCLUSION

For the foregoing reasons, the Court finds that the Motion (Dkt. No. 280) should be and hereby is **GRANTED**.

**So ORDERED and SIGNED this 17th day of September, 2025.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE