**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| COLLISION COMMUNICATIONS, INC. <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC. <br><br> Defendants. | Case No. 2:23-cv-00587-JRG <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF COLLISION COMMUNICATIONS, INC.'S
<u>MOTION FOR EXCEPTIONAL CASE ATTORNEYS' FEES</u>**

████████████████████████████████████████████

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................................... 1

LEGAL STANDARD ................................................................................................................... 1

ARGUMENT ................................................................................................................................. 1

I.    SAMSUNG ENGAGED IN A PATTERN OF LITIGATION MISCONDUCT...................... 1

   A.    Samsung's treatment of Ms. Oh's ESI and deposition are exceptional. ............................ 1

      1. Ms. Oh is a central figure in this case. ............................................................................ 1

      2. Samsung failed to investigate this key witness's ESI. ..................................................... 3

      3. Samsung's conduct with respect to Ms. Oh's ESI and deposition were
         exceptional. ...................................................................................................................... 5

   B.    Samsung's opposition to Collision's motion to amend served no purpose
         other than to multiply the proceedings and raise forfeited and frivolous
         arguments. ......................................................................................................................... 5

   C.    Samsung's treatment of its invalidity arguments appears to have had no purpose
         other than to increase the burden on Collision. .................................................................. 7

      1. Samsung litigated its section 112 defenses vexatiously. .................................................. 7

      2. Samsung advanced threadbare obviousness arguments to magnify the burden
         of this litigation on the Court and on Collision. ............................................................ 10

II.   SAMSUNG ADVANCED SUBSTANTIVELY WEAK POSITIONS ................................. 10

   A.    Samsung's summary-judgment positions were substantively weak. ................................ 10

   B.    Samsung's trial themes centered on attorney argument with no basis in fact. ................. 11

III.  THE COURT SHOULD AWARD COLLISION ITS FEES. ............................................... 15

i

██████████████████████████

## TABLE OF AUTHORITIES

**Cases**

*Ariad Pharms., Inc. v. Eli Lilly & Co.*
  598 F.3d 1336 (Fed. Cir. 2010) ............................................................................................ 7

*B.E. Tech., L.L.C. v. Facebook, Inc.*
  940 F.3d 675 (Fed. Cir. 2019) ............................................................................................ 15

*Durel Corp. v. Osram Sylvania Inc.*
  256 F.3d 1298 (Fed. Cir. 2001) ............................................................................................ 7

*Intell. Ventures I LLC v. Trend Micro Inc.*
  944 F.3d 1380 (Fed. Cir. 2019) ............................................................................................ 1

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*
  572 U.S. 545 (2014) ................................................................................................... 1, 15

*Personalized Media Commc'ns, LLC v. Zynga, Inc.*
  No. 212CV00068JRGRSP, 2013 WL 5962812 (E.D. Tex. Nov. 7, 2013) ................................. 7

**Statutes**

35 U.S.C. § 103 ................................................................................................................. 10

35 U.S.C. § 112 .............................................................................................................. 9, 10

35 U.S.C. § 285 .............................................................................................................. 1, 15

**Rules**

FED. R. CIV. P. 54(d)(2) ...................................................................................................... 15

**Other Authorities**

FED. R. CIV. P. 54 Advisory Committee's Note ¶ 7 (1993) ............................................................ 15

**INTRODUCTION**

Samsung's pattern of engaging in litigation misconduct, combined with the substantive weakness of Samsung's litigation positions, render this case exceptional and warrant a tailored award of attorneys' fees to Collision as the prevailing party in this action.

**LEGAL STANDARD**

Section 285 of the Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.  In general, an "exceptional" case is "simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553–54 (2014).  The Court exercises "equitable discretion" in determining whether a case is "exceptional," which is based on the totality of the circumstances.  *Id*. at 554.  However, "a district court has discretion, in an appropriate case, to find a case exceptional based on a single, isolated act."  *Intell. Ventures I LLC v. Trend Micro Inc.*, 944 F.3d 1380, 1384 (Fed. Cir. 2019).

**ARGUMENT**

I.   **SAMSUNG ENGAGED IN A PATTERN OF LITIGATION MISCONDUCT.**

From discovery through trial, Samsung engaged in a series of actions that served no purpose other than to increase the burden of this litigation both on the Court and on Collision.

A.   **Samsung's treatment of Ms. Oh's ESI and deposition are exceptional.**

Indicative of Samsung's improper litigation strategy is its treatment of ESI discovery and the deposition of Ms. Serji (Sun Ja) Oh, Samsung's corporate representative on the issue of willfulness and chief negotiator with Collision in the pre-suit near-decades-long negotiations.

1.   **Ms. Oh is a central figure in this case.**

As was made clear at trial, Ms. Oh is a central figure in this case, as the Samsung

1

████████████████████████████████████

representative who negotiated with Collision on behalf of Samsung starting in 2011. *See, e.g.*, Trial Tr. (Oh) 811:6–13 (Ms. Oh confirming that she had been "involved in discussions regarding Collision for almost 14 years now"). Ms. Oh and her assistant, Ms. Kim, are the authors of or were otherwise involved in most of the trial exhibits that discuss a potential Samsung-Collision partnership. *See, e.g.*, PX-3, 16–17, 20–22, 25, 33; JX-7, 9, 11, 14, 19, 21, 56, 59; DX-240. Those documents and Ms. Oh's testimony made her a crucial witness, as she could speak to Samsung's state of mind regarding Collision and Samsung's infringement of Collision's patents:

- Ms. Oh testified directly to Samsung's state of mind in its dealings with Collision when she explained that Samsung faked empathy in its communications with Collision. Trial Tr. (Oh) 801:16–802:9.

- She stated in an email that Samsung had concluded that Collision was "unlikely" to "take legal action," confirming that Samsung was both aware of the risk of proceeding with its infringement and had affirmatively dismissed it. PX-33.7; *see also* PX-16.50 ("Our company's development plan . . . Risk/Issue").

- She confirmed that Samsung understood the benefits it would receive from infringing Collision's technology, confirming that Samsung was aware in 2013 that "using Collision's technology could yield an improvement of about 5 decibels at the cell edge," Trial Tr. (Oh) 802:18–25,[1] and that it seemed "necessary" for Samsung to have "a contingency plan" in case the partnership did not move forward, *id.* 803:25–804:9.

- She steered the ship on Samsung's attempts to copy Collision's technology, asking her assistant Ms. Bo Hee Kim to assess the costs Samsung would incur from "develop[ing]" "Collision's technology" in house," despite knowing at the time that "Collision had a patent portfolio that it claimed related to its technology." *Id.* 803:10–24.

- Despite her direct role in the negotiations and in spearheading internal efforts to copy Collision's technology, through the date of her deposition, Ms. Oh had never even tried to review Collision's patents. *Id.* 811:6–16.

By Ms. Oh's own telling in her documents and at her deposition, Samsung was impressed with Collision's technology. *See, e.g.*, PX-22.7–8 (confirming that Collision's technology outperformed Samsung's internal project, "Smart Technology"). But Samsung did not want to

---

[1] This corresponded to a 316% increase in edge capacity. Trial Tr. (Mahon) 1071:17–25.

2

pay Collision for its technology.  *See, e.g.*, PX-20.10 ("[I]f we decide to adopt C company's technology, we will have to pay for it."); Trial Tr. (Oh) 804:23–805:1 ("[I]n January of 2014, your management wanted the benefits of collaboration with Collision to be more free.  Is that right?  A. Yes.").

That is not to say Samsung did not want to pay *any* money for Collision's technology: it was willing to fund universities to copy Collision's technology in an "urgent matter and directive from above," PX-17.4, *see also* PX-19, to the tune of "296,073,000 won" and "65.5 M/M."  Trial Tr. (Oh) 806:4–809:2.  Samsung's "development plan" included devoting in-house personnel to the project, alongside "personnel from Russian research institutes"—but Samsung nonetheless recognized the "Risk/Issue" of moving forward without a license.  PX-16.50.

Ms. Oh even explained that she sought and achieved the promotion of her "subordinate," Ms. Kim, despite being unable to warrant that Ms. Kim was either trustworthy or honest, *id.* 809:3–810:2.  Indeed, Ms. Oh's endorsement listed her dealings with Collision as one of Ms. Kim's "major accomplishments," and lauded Ms. Kim for "[r]educ[ing] dispute risk through follow-up actions after non-adoption decisions."  *Id.* 810:3–16.  In other words, Ms. Oh promoted her "subordinate" by citing her success at leading Collision on through the years.

Given Ms. Oh's deep involvement in Samsung's dealings with Collision, her status as a central figure in this case is undeniable.

### 2.    Samsung failed to investigate this key witness's ESI.

Despite Ms. Oh's critical role in this case, Samsung failed to take adequate steps to investigate and produce her ESI.  Samsung first offered a date for Ms. Oh's deposition on February 17, 2025, with the deposition to take place on March 12, 2025.  Ex. A at 1.  After a series of follow-up emails on the issue, Samsung stated on March 4, 2025 that Ms. Oh "does not have ESI from the relevant date range."  Ex. B at 7.On follow up, Samsung again confirmed.  *Id.*

3

at 3 ("Regarding Ms. Oh's data, we confirmed that she has no emails from 2011 to 2018.  Her emails from 2018 to present are not relevant.").  Collision inquired why it was that Ms. Oh had no ESI, to which Samsung curtly submitted that "Ms. Oh does not have any ESI due to SEC's email and document retention policies." *Id.* at 2.  Two days before the deposition, Collision's counsel discovered several emails belonging to Ms. Oh had in fact been produced. *Id.*  Upon inquiry, Samsung stated that the emails "did not come from Serji Oh"; that, as it had "previously advised, Ms. Oh does not have any emails before 2018 in her possession"; and that the documents were produced from Ms. Kim's files, "whom [Samsung] did not understand to be a relevant custodian for ESI Rog No. 5 but apparently had responsive communications." *Id.* at 1.  Given the late identification of Ms. Kim, Collision pressed Samsung to again confirm that it had produced all relevant documents "within Samsung's possession custody or control." *Id.*

The day before Ms. Oh's deposition, as Collision's counsel prepared in Korea, Samsung stated that "it ha[d] just come to [its] attention that there was a miscommunication regarding Serji Oh's documents and the existence of ESI during the relevant period." Ex. C at 4.  Samsung then unilaterally cancelled Ms. Oh's deposition because it was "missing the documents necessary to adequately prepare her to testify on the topics requested by Collision." *Id.* at 4.

This development threw a wrench in Collision's counsel's travel plans, but Samsung declined to expedite the production or provide a rescheduled date for Ms. Oh's deposition while Collision's team was still in Korea, Ex. D at 1 (rescheduling deposition for April 4 in San Francisco).  On March 24, 2025, two weeks after the initially scheduled deposition, Samsung finally informed Collision it would "produce Ms. Oh's ESI on 3/31 on the latest," which would be the Monday before the deposition. Ex. E at 1.  Notably, much of that very ESI—translated on an expedited basis from Korean to English—was the subject of Ms. Oh's deposition.

4

███████████████████████████████████

### 3. Samsung's conduct with respect to Ms. Oh's ESI and deposition were exceptional.

Because of Samsung's failure to adequately investigate Ms. Oh's ESI—a central figure in the Collision-Samsung negotiations—Collision incurred the burden of traveling to Korea to take Ms. Oh's deposition, only to be turned away at the last moment because *Samsung* felt it was "missing the documents necessary to adequately prepare" its witness.  Ex. C at 4.

Samsung unquestionably knew or should have known that Ms. Oh was an important witness in this case who had engaged in years-long email exchanges both with Collision and internally at Samsung regarding Collision's technology.  The trial record is a testament to her documents' importance: she authored numerous key emails that revealed Samsung's state of mind regarding Collision.  *See, e.g.*, PX-33.7 (an email where Ms. Oh states it is "unlikely" Collision "will take legal action"); PX-22.7–8 (an email to Ms. Oh where a Samsung engineer explains that Collision's technology is more efficacious than a Samsung internal project); PX-20.10 (an email thread where Ms. Oh responds to Mr. Park's inquiring why Samsung would not "proceed with a license agreement" by stating that he was "absolutely right," "[h]owever, if we decide to adopt C Company's technology, we will have to pay for it.").

Samsung's failure to investigate Ms. Oh's ESI is particularly egregious given Collision's repeated questions regarding Ms. Oh's ESI.  But even without Collision's prompting, Samsung should have been diligently planning and preparing its witness.  Samsung's failure to even attempt to meet its discovery obligations without Collision's prodding and prompting is exceptional and warrants an award of fees and related travel and deposition cancellation costs.

### B. Samsung's opposition to Collision's motion to amend served no purpose other than to multiply the proceedings and raise forfeited and frivolous arguments.

After the first day of the pretrial conference, the Court issued a Supplemental Claim

Construction Order clarifying its construction of the term "multiple users." Dkt. 269. By its own terms, the Order adopted a construction that "is close to Collision's construction but clarifie[d] the source cannot just be any source of a data stream," but, instead, "must be provided for transmission over the communications medium." *Id.* at 12.

The next day, Samsung's counsel cryptically announced to the Court that it believes "the only theory" that Dr. Kowalski "has articulated in his reports violate[s] a number of things that have been stated and [the Court's] claim construction for the multiple user," and, armed with a pre-prepared presentation, offered to "preview" that argument to the Court. Dkt. 279 (Pretrial Day 2 Tr.) at 318:8–23. That presentation never happened. But after the hearing, Collision reached out to Samsung to inquire about the nature of Samsung's objections to Dr. Kowalski's opinion. After a belabored back and forth where Samsung declined to explain why it thought Dr. Kowalski's opinion violated the Order, Collision opted to serve a supplement to Dr. Kowalski's report that explained why, in Dr. Kowalski's view, the Court's current construction was consistent with his original opinions. *See* Dkt. 280-2, 280-4.

Samsung opposed that supplementation on numerous baseless grounds, including by asserting that the report would introduce an "unambiguous opinion that practicing the LTE and/or 5G standards is enough to infringe." Dkt. 282 at 6; *id* at 9–10 ("This new theory would, therefore, transform this case into an SEP case two weeks before trial"). Samsung claimed that it would be prejudiced because it "did not seek discovery or develop SEP-related damages theories based on Collision's assurance that the asserted patents are *not* standard essential," *id.* at 13–14, and that the supplement warranted a continuance, *id.* at 15.

This Court squarely rejected that gambit, agreeing with Collision that Dr. Kowalski's supplement was consistent with his opening report, Dkt. 286 at 2–4, that the report was "not

6

inconsistent" with the Court's Order, *id.* at 5, and that no new SEP theory was disclosed, *id.* at 6.

Samsung's attempt to turn the Court's supplemental construction opinion—which itself stated that it was "close to Collision's construction"—into a do-over on fact discovery and a reason for delaying the trial date was nothing more than gamesmanship.  Samsung opposed Collision's supplementation only to magnify the burden of this litigation on the parties and the Court, offering specious arguments that Dr. Kowalski, Collision's own expert, had advanced arguments that disagreed with what amounted to Collision's own proposed construction.  Not only did that position make little sense, but Samsung's decision to force briefing on the issue on the eve of trial unnecessarily expended both the Court's and Collision's resources, warranting an exceptional case finding and an award of fees.

**C.**      **Samsung's treatment of its invalidity arguments appears to have had no purpose other than to increase the burden on Collision.**

Samsung's invalidity case likewise demonstrates its vexatious litigation behavior.

**1.**      **Samsung litigated its section 112 defenses vexatiously.**

Collision moved for summary judgment on Samsung's written description and enablement defenses.  Dkt. 135.  Written description and enablement require comparison between the *claims* and the *patents' disclosures*,[2] but Samsung's expert offered only an improper comparison between the *accused products* and the *patents' disclosures*.  *See generally id*.

At the motion hearing, the Court asked counsel for Samsung to confirm that, "in [his]

---

[2] It is abundantly well-settled that the proper comparison for written description and enablement is between the claims and the patent disclosure, not the accused products and the patent disclosure.  *E.g.*, *Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1306 (Fed. Cir. 2001) ("The dispositive question of enablement does not turn on whether the accused product is enabled."); *Personalized Media Commc'ns, LLC v. Zynga, Inc.*, No. 212CV00068JRGRSP, 2013 WL 5962812, at *2 (E.D. Tex. Nov. 7, 2013); *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (written description requires "possession as shown in the disclosure" and "an objective inquiry into the four corners of the specification").

view," Dr. Mahon offered "no conflation between the analysis for infringement and written description enablement," to which counsel flatly responded, "Absolutely not. Correct, Your Honor." Dkt. 278, Pretrial Tr. (Vol. 1) 145:10–13. The Court therefore denied the motion but made clear that it was "not going to allow the defendant to urge the jury to compare the accused products to the specification on the infringement question or to make any other improper comparison on the written description and enablement defenses." *Id.* 148:3–8.

Fast forward to trial, Dr. Mahon offered precisely that improper comparison, testifying that the patents lacked § 112 support because they did not disclose the accused products:

> Q. So did you find any description in the patent of a different type of system where you cancel out all the interfering signals and just have one desired signal?
> A. No, not that I recall.
> Q. Did you find any description in the patent about a MIMO layer-type system anywhere in the patent?
> A. No. My opinion is in agreement with several others you heard from. There is no MIMO mentioned in those patents.
> Q. So what happens when Dr. Kowalski takes this patent and the claims of this patent and try to apply it to very different systems like MIMO systems and channel estimation systems that cancel out interference?
> A. Well, as you see on the title of this slide, it lacks written description. . . .

Trial Tr. 954:5–19. Counsel for Collision objected, and the issue was taken up at the bench. There, the Court explained the witness was indeed conducting an improper comparison and sustained Collision's objection, striking the Q&A from the record. *See* Trial Tr. (Mahon) 954:25–957:25. Samsung's counsel was permitted to re-ask his questions in a non-leading manner, to which Dr. Mahon persisted that his written description and enablement views were "[b]ased on the infringement theories and how they were put forward." *Id.* 958:17–24. On Collision's objection, the Court *again* clarified that "the comparison here for written description/ enablement is between the language of the specification and the language of the claims," "not a comparison to the accused products and what they do have and what they don't have." *Id.* 959:17–960:4. It then excluded "testimony that is contrary to that in the last exchange." *Id.*

8

960:5–7.  On continued examination, however, Dr. Mahon could offer no basis for his opinion other than "the reasons that [he] just described," which had been excluded.  *Id.* 960:19–21.

Then, on cross-examination, Dr. Mahon confirmed that he did not have an opinion to offer that hewed the Court's guidance on the law and failed to offer an analysis for enablement:

> Q. And then you said, oh, I just found there's not written description support for the '703 and '651. Do you remember saying that?
> A. I do remember addressing that, yes.
> Q. We had this kind of little discussion about what the proper context of a written description analysis was. Do you remember that?
> A. Yes.
> Q. If we're following the Court's guidance on the law and we're saying for written description you look at what's in the claim and whether that's described in the patent, you don't have a written description opinion that the . . . '703 or '651 are invalid. Correct?
> A. Given the events with respect to the direction by Your Honor, my analysis was based upon taking the position from Dr. Kowalski, so that would remove that as a construct for my analysis.
> Q. Using the law from the Court, you do not have a written description or enablement defense that you're presenting on the '703 or '651. Correct?
> A. The written description for '703 would -- was -- that I presented relied on my analysis that was outside that, so *that wouldn't be applicable*.
> Q. Okay. And in your direct testimony, you didn't do an enablement analysis, though. Right?
> A. I discussed it, but I don't -- *I didn't do an analysis*.

*Id.* 1042:15–1043:15 (emphasis added).  Dr. Mahon has *never* had an opinion that complied with the law, even though counsel for Samsung warranted otherwise at the pretrial conference.

Had Samsung's counsel been forthright about the content of Dr. Mahon's opinion, Samsung's error-laden § 112 arguments could have been eliminated at summary judgment. Instead, Samsung resorted to misrepresentations to preserve those defenses until the last day of evidence in the jury trial.  Notably, written description and enablement were the *only* invalidity defenses that Samsung maintained through trial for the '651 and '703 patents, which account for the lion's share of the damages award.  Ex. F; Trial Tr. (Bergman) 764:18–22.

Samsung's misrepresentations at summary judgment forced Collision's witnesses and

9

████████████████████████████

attorneys to prepare for a purportedly disclosed written description and enablement opinion that simply did not exist. Samsung's cavalier attitude towards its representations to the Court was exceptional and warrants an award of fees.

### 2. Samsung advanced threadbare obviousness arguments to magnify the burden of this litigation on the Court and on Collision.

On the deadline for providing notice of final invalidity theories, Samsung still maintained 10 different bases for invalidity across the asserted patents. Dkt. 287. Only after the jury was seated did Samsung narrow its arguments to the written description and enablement defenses and obviousness combinations it presented at trial. Ex. F (dated two days after 10/3 jury selection). Despite acknowledging that Samsung had to prove obviousness by clear and convincing evidence burden to prevail on that issue, Dr. Mahon spent only about fifteen minutes discussing obviousness. *See* Trial Tr. (Mahon) 1042:5–14. And while several claims have means-plus-function limitations, Dr. Mahon did not even attempt to map them to the prior art, instead relying on high-level references to Dr. Kowalski's *infringement* analysis, *id.* 964:4–970:2, testimony for which Dr. Mahon was not even present, *id.* at 1046:6–19, 986:2–12.

Weeks after the originally scheduled trial date, Samsung could not have reasonably expected to try ten different bases for invalidity. And as the trial record revealed, the four bases that Samsung did maintain either lacked an evidentiary basis (§ 112) or a meaningful attempt to meet Samsung's high burden (§ 103). The manner in which Samsung litigated invalidity appears to have been designed to create a significant burden on Collision in the lead-up to trial despite Samsung having little to no intention to raise most of its asserted defenses seriously before the jury. That improper strategy further warrants an exceptional case finding and fees.

## II.    SAMSUNG ADVANCED SUBSTANTIVELY WEAK POSITIONS.

### A.    Samsung's summary-judgment positions were substantively weak.

10

Samsung's summary-judgment litigation positions regarding written description and willfulness were both exceptionally weak, and they confirm that this Court should award fees.

**Written description and enablement.**  As explained above, *see supra* § I.C.1, Samsung opposed Collision's summary-judgment motion on Samsung's written-description and enablement defenses by warranting that it did *not* plan to make a legally improper comparison between the specification and the accused products at trial—and then Samsung went ahead and did exactly that anyway.  That left Samsung with no substantive written description or enablement defense—the very definition of a substantively weak litigation position.

**Willfulness.**  Apart from written description and enablement, Samsung also raised a completely meritless willfulness summary-judgment motion, despite the parties' almost decades-long negotiations.  In its motion, Samsung argued that it should be absolved of liability for its willful infringement of Collision's patents because "the only thing Samsung has done, either pre- or post-suit, is to continue to sell the accused products" and Collision "Made No Effort to Stop Samsung's Alleged Willful Infringement."  Dkt. 132 at 6, 8.  That statement is demonstrably false, even considering just the evidence involving Ms. Oh cited above.  *See supra* § I.A.1; *see also* Collision's enhancement motion.  The record includes no shortage of emails, meeting notes, slide presentations, and internal documentation that reveal Samsung's culpable intent: Samsung repeatedly told Collision that it was impressed with Collision's patented technology before choosing to copy it for itself using a combination of Korean universities and Russian personnel. Samsung chose this path because it did not want to pay for Collision's technology.

**B.      Samsung's trial themes centered on attorney argument with no basis in fact.**

At trial, Samsung repeatedly took the jury down detours that were wholly non-substantive and, in many cases, belied by the timeline of events and documentary evidence. That misguided strategy increased the burden on the Court and Collision and likewise contributes to

11

███████████████████████████████████

showing that this is an exceptional case warranting fees.

**C-RAN**. Samsung's focus on C-RAN during the examination of Collision's fact witnesses provides a notable and illustrative example. C-RAN is a base station architecture with no relevance to phones. *E.g.*, Trial Tr. (J. Fry) 406:12–407:4; *id.* 629:23–631:1 (Dr. Kowalski explaining that C-RAN has no application in phones). C-RAN was not offered as a non-infringing alternative to the patented technology in this case. *Id.* (Bergman) 733:4–16.

Samsung wanted Mr. Farkas to agree that "Collision never ran a simulation to – and shared with Samsung any results comparing its sophisticated MUD technology against C-RAN systems where inter-cell interference information among cells would be shared and then cancelled out. Correct? You never did that simulation to show it was Samsung. Correct?" *Id.* (Farkas) 307:1–6.

The problem with Mr. Pak's assertion was that Collision indeed did run a C-RAN simulation and presented the results to Samsung. *Id.* 307:7–11 ("A. We did. Q. You did? A. Yes. Q. Did you share those results? A. I believe so."); *id.* 323:3–15 (Mr. Farkas explaining the C-RAN results showed "even better performance relative to that baseline"); *id.* (J. Fry) 366:3–12 (Mr. Jared Fry testifying that he presented C-RAN results to Samsung that were "quite compelling"); *id.* 407:10–17 ("In this very email that you sent to Samsung a few years later, what sort of performance were you showing in C-RAN architectures with your technology? A. We could show massive performance in C-RAN. Q. What are the numbers here, that 300 and 400 percent really mean? A. Yeah, 300 and 400 percent, that's 3X the amount of data, 4X the amount of data you could put through the network.").

Samsung knew that its assertion that Collision "never" demonstrated C-RAN results was false because those results were presented to Samsung in numerous documents. *See, e.g.*, Ex. G.

12

Not even Samsung's experts relied on C-RAN for any substantive point.  Trial Tr. (Mahon) 990:10–17 ("Do you know about what percentage of [Dr. Kowalski's examination] was spent talking about something called C-RAN?  A. What percentage, I wouldn't have a guess.  I'd say 10 percent? I don't know.  Q. Would you like to hazard a guess as to how many times C-RAN is discussed in any of your expert reports?  A. I would – don't recall mentioning C-RAN in my expert report, but I'd have to take a look.").

Yet Samsung made the argument, untethered from the factual record, that Collision never presented C-RAN results—apparently in an attempt to create an excuse for Samsung's decision to walk away from its discussions with Collision and choose to infringe instead.  That excuse made no sense in the context of the parties' discussions:

> [Samsung's excuse] didn't even make sense because they weren't talking about the C-RAN at all for that entire time that we were interacting with them, and so suddenly they're saying, Oh, we're not interested because there's this other type of base station that suddenly we want to talk about after two years with talking with them about a different type of base station, particularly when our technology is actually very well-suited to C-RAN's and we would have tremendous gain over that baseline, even higher than those previous results.  It made no sense.

Trial Tr. (Farkas) 323:19–324:3.  And despite raising it throughout Collision's case-in-chief, Samsung did not feature C-RAN in its own closing argument.

**Products never changed.**  Another problematic feature of Samsung's trial presentation was its argument that Samsung did not infringe because it was merely practicing the wireless standards the same way it had been before it met Collision, and did not adopt Collision's technology.  *E.g.*, Trial Tr. (Opening) 175:25–176:14 (when the S4 "released in 2013, it had all the technology that they're accusing now.  It hasn't changed. . . . Mr. Kang is going to talk to you about that and bring you the evidence of that.").  As promised, Samsung brought Mr. Kang from Korea to testify that the accused "MIMO technology use[s] standard techniques," *id*. (Kang) 866:21–22, that "[t]here has been no change in [Samsung's] MIMO technology," *id*. 867:15, and

13

that the same was true for Samsung's accused CRS interference cancellation techniques, *id.* 868:23–869:8. However, Mr. Kang was forced to confront Samsung's own technical documents that showed *both* the MIMO and CRS techniques *had in fact changed* from a non-infringing to infringing mode. *Id.* 873:20–76:21. Even Samsung's expert, Dr. Mahon, acknowledged that, during the pertinent time frame of that change, "Samsung met extensively with Collision." Trial Tr. (Mahon) 1000:17–1001:4.

One of Samsung's major trial themes was that its products had not changed, yet its own technical documentation proved that testimony false. That noninfringement position was extraordinarily weak and underscores that an exceptional case finding is proper here.

**Other "noninfringement" arguments.** Samsung's other "noninfringement" arguments were more of the same. Samsung crossed Dr. Kowalski for three hours, but nevertheless failed to identify any substantive noninfringement position, *see* Trial Tr. (Kowalski) 622:22–623:24, and even acknowledged in closing argument that Dr. Kowalski was truthful, *id.* 1278:19–25 ("I believed that [Dr. Kowalski] would tell us the truth about the technology at issue in this case"). At the same time, Samsung continued to advance legally and factually erroneous arguments:

- As to the '703/651 patents: Dr. Mahon argued that the claim term "multiple users" "indicat[es] to a POSITA . . . that it's from multiple devices." *Id.* 928:24–929:3. But that interpretation of the claim was hotly debated and specifically rejected by the Court. Dkt. No. 269 at 12 ("nothing in the patents suggests there must be a one-to-one correlation between 'users' and 'devices.'").

- As to the '505 patent: Dr. Mahon argued that Dr. Kowalski failed to offer a proper means-plus-function analysis because he did not "look[] at any of the figures and the texts to show that they are the same as what he's accusing." Trial Tr. 945:24–946:2. That assertion was plainly untrue. *Id.* 460:5–464:17 (comparing the accused products to the parameter estimation unit described in figure 3 of the '505 patent); *see also id.* 986:2–12 (Dr. Mahon admitting he was not present for Dr. Kowalski's testimony).

- As to the '492 patent, Dr. Mahon argued that because the '492 specification refers to the '505 patent as providing an example of a parameter estimation unit, all of the limitations of '505 patent claim 1 are incorporated into '492 patent claim 1. *Id.* at 947:23–948:13. Neither the '492 claim language nor any claim construction supports this argument.

14

███████████████████████

**A ten-minute damages direct**.  Samsung's ten-minute long, cursory direct examination of its damages expert, Ms. Rowe, likewise betrays the substantive weakness of Samsung's trial positions.  As the subsequent cross-examination made clear, Ms. Rowe did not grapple with the significant record in reaching her conclusions, including the parties' lengthy negotiations.

In short, the trial record demonstrates that Samsung offered substantively weak litigation theories to the jury, warranting an exceptional case finding and an award of fees for the trial.

## III.    THE COURT SHOULD AWARD COLLISION ITS FEES.

It is undisputable that Collision is the prevailing party in this case, answering the threshold question of 35 U.S.C. § 285.  *See B.E. Tech., L.L.C. v. Facebook, Inc.*, 940 F.3d 675, 677 (Fed. Cir. 2019).  Considering the totality of Samsung's conduct throughout this litigation, the Court should find this case to be exceptional, as it stands out from the mine-run of cases "with respect to the substantive strength of [Samsung's] litigating position[s] (considering both the governing law and the facts of the case)" and with respect to "the unreasonable manner in which [Samsung]" litigated this case.  *Octane Fitness*, 572 U.S. at 554.

Collision requests its fees and nontaxable costs connected to Samsung's exceptional conduct, narrowly tailoring its request to: (1) costs and fees related to Ms. Oh's first deposition date; (2) fees related to moving to amend Dr. Kowalski's report; (3) fees in connection with responding to Samsung's willfulness summary-judgment motion and rebutting Samsung's invalidity positions; and (4) fees related to trial.  Pursuant to Rule 54(d)(2), Collision estimates its reasonable fees and costs for the specific purposes described above to be approximately ████ ████  Should the Court grant Collision's request, Collision will submit any additional evidence in support of its fees that the Court deems necessary within 14 days of the Court's order or as otherwise instructed.  *See* Fed. R. Civ. P. 54 Advisory Committee's Note ¶ 7 (1993).

DATED: December 10, 2025

Respectfully submitted,

/s/ Bradley W. Caldwell
Bradley W. Caldwell
Texas Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Austin Curry
Texas Bar No. 24059636
Email: acurry@caldwellcc.com
Christopher S. Stewart
Texas Bar No. 24079399
Email: cstewart@caldwellcc.com
Justin T. Nemunaitis
Texas Bar No. 24065815
Email: jnemunaitis@caldwellcc.com
Aisha M. Haley
Texas Bar No. 24139895
Email: ahaley@caldwellcc.com
John F. Summers
Texas Bar No. 24079417
Email: jsummers@caldwellcc.com
James F. Smith
Texas Bar No. 24129800
Email: jsmith@caldwellcc.com
James Yang (admitted *Pro Hac Vice*)
CA Bar No. 329979
Email: jyang@caldwellcc.com
Alexander J. Gras
Texas Bar No. 24125252
Email: agras@caldwellcc.com
**CALDWELL CASSADY & CURRY P.C.**
2121 N Pearl Street, Suite 1200
Dallas, Texas 75201
Telephone:   (214) 888-4848
Facsimile:    (214) 888-4849

Andrea Leigh Fair
Texas Bar No. 24078488
Email: andrea@millerfairhenry.com
**MILLER FAIR HENRY, PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone:  (903) 757-6400
Facsimile:   (903) 757-2323

Paul D. Clement (*admitted pro hac vice*)
VA State Bar No. 37915
Email:  paul.clement@clementmurphy.com
C. Harker Rhodes IV (*admitted pro hac vice*)
VA State Bar No. 99759
Email:  harker.rhodes@clementmurphy.com
Camilo Garcia (*admitted pro hac vice*)
DC Bar No. 90004901
Email:  Camilo.garcia@clementmurphy.com
**CLEMENT & MURPHY, PLLC**

706 Duke Street
Alexandra, VA  22314
Phone:  (202) 742-8900
Facsimile:  (703) 997-6207

**ATTORNEYS FOR PLAINTIFF**
**COLLISION COMMUNICATIONS, INC.**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was served on all counsel of record via email on December 10, 2025.

/s/Bradley W. Caldwell
Bradley W. Caldwell

<u>**CERTIFICATE OF CONFERENCE**</u>

I certify that counsel for Collision met and conferred with counsel for Samsung to discuss the substantive relief sought in this Motion pursuant to Local Rule CV-7(h).  Counsel for Samsung indicated that it was opposed to the relief sought in this Motion.

/s/Bradley W. Caldwell
Bradley W. Caldwell

<u>**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**</u>

The undersigned certifies that the foregoing document is authorized to be filed under seal pursuant to the Protective Order submitted in this case.

/s/Bradley W. Caldwell
Bradley W. Caldwell