**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF TEXAS**

**MARSHALL DIVISION**

| | |
|---|---|
| COLLISION COMMUNICATIONS, INC., | |
| *Plaintiff*, | Case No. 2:23-cv-00587-JRG |
| v. | **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., | **ORAL ARGUMENT REQUESTED** |
| *Defendants*. | |

<u>**SAMSUNG'S MOTION FOR A NEW TRIAL UNDER RULE 59**</u>

**TABLE OF CONTENTS**

                                                                                    **Page**

I.      INTRODUCTION .................................................................................................1

II.     BACKGROUND ..................................................................................................2

III.    LEGAL STANDARD............................................................................................2

IV.     THE COURT'S JURY INSTRUCTIONS REQUIRE A NEW TRIAL............................2

        A.      The Marking Related Instructions Were Fatally Flawed........................................2

        B.      The Erroneous SSPPU Jury Instruction Tainted The Damages Award...................4

V.      COLLISION DID NOT FOLLOW THE COURT'S ORDER THAT THE 2013
        SIMULATION DOES NOT PRACTICE ANY ASSERTED CLAIMS............................5

VI.     COLLISION MADE THE VERY ARGUMENT TO THE JURY IT TOLD THE
        COURT AT CLAIM CONSTRUCTION IT WOULD NOT MAKE ...............................10

        A.      The Court's Claim Constructions Were Premised On Collision's Promise
                That External Applications Are Not Sources to Avoid Indefiniteness
                Finding ...................................................................................................10

        B.      Collision Argued At Trial That "Sources" Can Be Anything...............................13

VII.    COLLISION MISREPRESENTED THE COURT'S SIDEBAR RULING ....................14

VIII.   CONCLUSION..................................................................................................15

████████████████████████

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Aero Intern., Inc. v. U.S. Fire Ins. Co.*,
   713 F.2d 1106 (5th Cir. 1983) ..................................................................................3

*Ahrens v. Perot Sys. Corp.*,
   205 F.3d 831 (5th Cir. 2000) ................................................................................9, 14

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
   24 F.3d 178 (Fed. Cir. 1994)...................................................................................4

*Arctic Cat Inc. v. Bombardier Recreational Products Inc.*,
   876 F.3d 1350 (Fed. Cir. 2017)...............................................................................3

*Arctic Cat Inc. v. Bombardier Recreational Products Inc.*,
   950 F.3d 860 (Fed. Cir. 2020)..................................................................................4

*Britt v. Travelers Ins. Co.*,
   556 F.2d 336 (5th Cir. 1977) ...................................................................................3

*Cummins-Allison Corp. v. SBM Co., Ltd.*,
   2009 WL 763926 (E.D. Tex. Mar. 19, 2009) .........................................................12

*Edwards v Sears, Roebuck, and Co.*,
   512 F.2d 276 (5th Cir. 1975) ...................................................................................2

*Eiland v. Westinghouse Elec. Corp.*,
   58 F.3d 176 (5th Cir. 1995) .....................................................................................2

**it**. *Carnegie Mellon University v. Marvell Technology Group, Ltd.*,
   807 F.3d 1283 (Fed. Cir. 2015)............................................................................7, 10

*King v. Armstrong World Indus., Inc.*,
   906 F.2d 1022 (5th Cir. 1990) .................................................................................9

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012).....................................................................................5

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
   467 F.3d 1355 (Fed. Cir. 2006)...............................................................................12

*Phillips v. State Farm Mut. Auto. Ins. Co.*,
   437 F.2d 365 (5th Cir. 1971) ...................................................................................3

*Polanco v. City of Austin*,
    78 F.3d 968 (5th Cir. 1996) ...................................................................................................2

*Shows v. Jamison Bedding, Inc.*,
    671 F.2d 927 (5th Cir. 1982) .................................................................................................2

## Other Authorities

Fed. R. Civ. P. 50(a) ...............................................................................................................2, 3

Fed. R. Civ. P. 59(a) ..................................................................................................................2

Patent L.R. 3-1(f) ....................................................................................................................6, 7

## I.    INTRODUCTION

As Samsung showed in its concurrently filed JMOLs, Collision failed as a matter of law to prove any of its allegations in this case.  However, if the Court does not grant Samsung's JMOLs, the Court should order a new trial to remedy the prejudicial error that tainted the trial.[1]

*First*, the Court gave two improper jury instructions that each independently warrants reversal.  The Court did not instruct the Jury that Collision had the burden of proving entitlement to pre-suit damages.  Nor did the Court instruct the Jury on the law with respect to the smallest salable patent practicing unit (SSPPU), improperly allowing damages on entire smartphones.

*Second*, Collision flouted the Local Rules by misrepresenting to the Court what it planned to do at trial with its technical expert's use of the 2013 simulation to prove damages.  Instead of arguing that the simulation did not practice the '703 and '651 patents, Collision's technical expert testified that the simulation met every limitation of the '703 and '651 patents' asserted independent claims and that the simulation "simulated" those patents.  It was monumentally prejudicial for Collision to present this damages case and ignore the Court's order regarding the simulation.

*Third*, Collision twice promised the Court it would not argue that upstream applications like Facebook could be "sources," a position that the Court explicitly relied upon in rejecting Samsung's indefiniteness arguments.  But at trial, Collision embraced the position it disavowed, arguing that upstream applications are indeed sources of data and the "multiple users" can all come from the same individual application.  Collision's two-step is improper and prejudicial on its face.

*Fourth*, the Court improperly limited Samsung's Section 112 arguments.

These legal errors, and Collision's exploitation of them, created cumulative prejudice that

---

[1]    Samsung incorporates by references its contemporaneously filed JMOLs, and respectfully submits that, should the Court determine that any of the issues discussed therein do not warrant JMOL, those issues warrant a new trial.

1

fatally infected the verdict.  Samsung respectfully requests that the Court grant a new trial.

## II.    BACKGROUND

Samsung provides a background of the case in its concurrently filed JMOLs, which are incorporated herein.  Relevant specific facts are discussed in the individual sections below.

## III.    LEGAL STANDARD

The Court can grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a).  A new trial is appropriate if there is prejudicial error in jury instructions, evidentiary rulings, or submission of issues that should not have been before the jury, or if the damages award was "clearly excessive."  *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995).  A new trial is also proper if the verdict is against the "great weight of the evidence."  *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982).  A verdict infected by passion and prejudice requires a new trial.  *Edwards v Sears, Roebuck, and Co.*, 512 F.2d 276, 282-83 (5th Cir. 1975).  The court may also remit an award deemed "excessive."  *Polanco v. City of Austin*, 78 F.3d 968, 981 (5th Cir. 1996).

## IV.    THE COURT'S JURY INSTRUCTIONS REQUIRE A NEW TRIAL

"A new trial is appropriate if there is prejudicial error in jury instructions …."  *Eiland*, 58 F.3d at 183.  Errors in the Court's pre-suit damages instructions include (1) the lack of a jury instruction stating that Collision bore the burden on the issue of marking, (2) the confusing jury instruction regarding what marking issues remained after the Court's Rule 50(a) ruling, (3) the confusing jury instruction regarding actual notice.  Separately, the lack of a jury instruction with respect to the smallest salable patent practicing unit (SSPPU) was also prejudicial error

### A.    The Marking Related Instructions Were Fatally Flawed

Collision's non-compliance with the marking statute is a central issue to this case—nearly 99% of the damages in this case are pre-suit.  At the pretrial conference, the Court rightly found

2

that Samsung met its initial burden of production under *Arctic Cat* and that it was Collision's burden to prove its licensees either marked or did not have to. Transcript of 8/26/2025 Pre-Trial Conference ("PTC Tr. Vol. 1") at 175:2-5. Upon this finding, the burden shifted to Collision to prove compliance with the statute. *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350, 1367 (Fed. Cir. 2017). Collision failed to meet this burden, and before delivering the case to the Jury, the Court granted Samsung's motion under Rule 50(a) for judgment as a matter of law that there was no constructive notice—meaning that Collision's licensees were required to mark but did not. Tr. at 1195:19-1196:1 (granting JMOL on "the issue of constructive notice brought about by marking patents numbers on products either directly or indirectly" because "there is no evidence and no reasonable jury could find to the contrary that there is no constructive [notice]"); *see also id.* at 1183:17-23 ("**there is no evidence before this jury of any constructive notice of pre-suit damages**."). Despite this ruling, the Court still included instructions on marking over Samsung's objection. *Id*. at 1197-98. Samsung also objected on the basis that the Court's explanation of "actual notice" did not properly convey the legal standard, and that burden was not clearly established in the instructions. *See id.* at 1188, 1197-98.

Critically, the Court never informed the Jury which party bore the burden on these issues. Tr. 1242:19-1243:15. Both parties even agreed the Jury should have been instructed on burden in the proposed jury instructions jointly submitted to the Court. Declaration of John McKee ISO Motion ¶3, Ex. 1 at 28-29. The lack of any explanation to the Jury regarding burden as to any marking related issue dooms the verdict. "[E]rroneous instruction on burden of proof alone is reversible error." *Aero Intern., Inc. v. U.S. Fire Ins. Co.*, 713 F.2d 1106, 1113 n.7 (5th Cir. 1983) (quoting *Phillips v. State Farm Mut. Auto. Ins. Co.*, 437 F.2d 365, 368 (5th Cir. 1971); *see also Britt v. Travelers Ins. Co.*, 556 F.2d 336, 338 (5th Cir. 1977) ("Because the court erred in instructing the jury on the burden of proof, we reverse and remand."), *on reh'g* 566 F.2d 1020 (5th

3

Cir. 1978). Thus, this issue alone warrants a new trial.[2]

In addition to the burden issue, this instruction both prejudicially swayed the Jury and is legally wrong as to actual notice. The Court instructed the Jury that actual notice occurred if Collision "***communicated or brought home to Samsung in a reasonable way*** an assertion that Samsung's accused products use or would use Collision's patented technology such that Samsung would be infringing Collision's patents if they did not obtain a license from Collision to practice the asserted patents," Tr. at 1243:10-15, but there is no basis in Federal Circuit law for this language. The clear and longstanding Federal Circuit requirement, which Samsung proposed, is that "[a]ctual notice ***requires the affirmative communication of a specific charge of infringement*** by a specific accused product or device." *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) (emphasis added) (quoting *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994)). The Court's "communicated or brought home . . . in a reasonable way" language incorrectly lowered the Federal Circuit's established standard for actual notice, thus constituting prejudicial error as well.

The Court's instruction also warrants a new trial because it included instructions related to marking and licensee products practicing or not practicing the asserted patents despite the Court's correct ruling that there was no constructive notice—which necessarily entails a finding that Collision's licensees were required to mark their products. *See* Tr. at 1242:19-1243:15.

### B.    The Erroneous SSPPU Jury Instruction Tainted The Damages Award

---

[2]   Collision argued that marking was not required for products that comply with the LTE and 5G standards because they did not practice the asserted claims, but then accused Samsung's products that operate according to those same standards of infringement. As discussed in Samsung's JMOLs, these positions are unavoidably inconsistent and warrant JMOL. Should the Court disagree and instead order a new trial, Collision's positions on marking and infringement are so inextricably linked that they should be retried together.

"Where small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product. Thus, it is generally required that royalties be based not on the entire product, but instead on the 'smallest salable patent-practicing unit.'" *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012). While the entire market value rule offers patentees a "narrow exception to this general rule," that exception applies *only* where "it can be shown that the patented feature drives the demand for an *entire* multi-component product." *Id.* (emphasis added). Samsung proposed a jury instruction consistent with this law. Tr. at 1200:8-23. The Court overruled Samsung's objection and did not give an SSPPU instruction. *Id*. at 1200:24. But, Mr. Bergman's royalty base consisted of sales of entire Samsung accused products: smartphones and tablets. Tr. at 762:9-24; JX-62. Yet, Dr. Kowalski's infringement analysis did not focus on the accused products as a whole.

Dr. Kowalski admitted that "chipset source code … tells you whether or not the phone is infringing." Tr. at 433:23-434:2. He also readily agreed that "[t]he chipset code" is "the most important type of evidence to understand how the phones at issue in this case work." Tr. at 627:2-7. Neither Dr. Kowalski nor any other witness offered any infringement analysis of any unit larger than the modem chipset. Nor did any witness testify that the patented technology drives demand for the entire accused products, as required to meet the "narrow exception" of *LaserDynamics*. 694 F.3d at 67. Thus, it was undisputed that the chipset is the SSPPU, and any royalties should have been awarded on the chipset unit price, not the full accused product price. The Jury should have been instructed as much, and that the lack of such an instruction warrants a new trial.

V.     **COLLISION DID NOT FOLLOW THE COURT'S ORDER THAT THE 2013 SIMULATION DOES NOT PRACTICE ANY ASSERTED CLAIMS**

As explained in Samsung's JMOLs, Collision's entire damages case fails as a matter of

5

law because it depends on the 2013 simulation, which Dr. Kowalski admitted does not practice the asserted claims. Given that the simulation does not practice the asserted claims, it cannot serve as a basis for apportioning the value of those claims. Thus, Collision failed to prove up apportionment and failed to establish entitlement to damages.

By the same logic: *if* the Court denies JMOL because it finds Collision *did* apportion, that would necessarily include finding that the simulation *did* practice the asserted claims of at least the '703 and '651 patents. But, if the Court denies the JMOL, then Samsung is entitled to a new trial because Collision violated both the Local Rules and the Court's express order.

Dr. Kowalski began by testifying that the simulation does not practice the '703 or the '651 patent. Tr. at 501:4-5 (Kowalski), 767:15-19 (Bergman). He did so because the Court ordered him to. 8/27/2025 Pre-Trial Conference ("PTC Tr. Vol. 2") at 276:17-277:13. Before trial, Samsung moved to exclude Dr. Kowalski's opinion that the simulation led to a 15% increase in average data download speed because Collision failed to disclose that it would rely on that simulation. *See* Dkt. 139 at 12-16; Dkt. 188 at 2-4. Indeed, Collision did not merely fail to disclose the simulation: it *affirmatively represented* that it "[did] not wish to preserve the right to rely on the assertion that its own apparatus, product, device, process, method, act, *or other instrumentality* practices the claimed inventions" under Patent Rule 3-1(f). Dkt. 139 at 5 (emphasis added). Patent Rule 3-1(f) in turn expressly requires a patent plaintiff to disclose any instrumentality on which it wishes to "preserve the right to rely, *for any purpose.*" P.R. 3-1(f) (emphasis added).

At the hearing, the Court recognized the simulation posed a problem for Collision. Collision could not dispute that it never disclosed to Samsung that the simulation was relevant to any damages theory related to the asserted patents, but the Court recognized that the simulation is "important to [Collision's] … damages case." PTC Tr. Vol. 1 at 224:10-13. In resolving that dilemma, the Court held that the Patent Rule 3-1(f) "disclosure requirement" applies only to "prior

art or an indication of lack of inventiveness or something that goes to the liability side of the case; not something that's relegated solely to the damages side of the case" (*id.* at 226:23-227:3) and thus ordered that Dr. Kowalski could opine as to the simulation only for damages-related purposes. PTC Tr. Vol. 2 at 277:7-13.  The Court also expressly ordered that Dr. Kowalski "make it clear that in his opinion the simulation does not practice the patents." *Id.*  Samsung respectfully submits that the Court's approach to the simulation issue was prejudicial error.  Patent Rule 3-1(f) is clear on its face that a plaintiff must disclose any patent-practicing instrumentality on which it wishes to rely ***"for any purpose"***—not "any liability-related purpose" or "any purpose except damages"— and the prejudice from Collision's undisputed failure to disclose the simulation that formed the foundation of its damages case could not be cured by having Dr. Kowalski testify that in his opinion the simulation does not practice the patents.

Collision and Dr. Kowalski at least needed to hold up their end of the deal.  They did not. While Dr. Kowalski stated in a conclusory way that the simulation did not practice the patents, the balance of his testimony made clear that his opinion was the opposite.  Specifically, Dr. Kowalski testified that every single limitation of the asserted independent claims from the '703 and '651 patents was met by the 2013 simulation.  Tr. at 501:16-503:17.  This original testimony was not a mistake.  During redirect examination, again taken by Collision's counsel, Dr. Kowalski doubled down on his opinion that the 2013 simulation practiced the '703 and '651 patents.  Tr. 648:12-14 ("Q.  And did you identify that the Collision simulation simulated the '651 and '703 Patents? A. That's right.").  Critically, there was no testimony or evidence that the 2013 simulation did ***not*** meet any limitation from the asserted claims of the '703 and '651 patents.  Nor do Collision and Dr. Kowalski's word games—using "simulated" instead of "practiced"—change the analysis.  As the Federal Circuit has held, ***simulating a claim is the same as practicing it***.  *Carnegie Mellon University v. Marvell Technology Group, Ltd.*, 807 F.3d 1283, 1296 (Fed. Cir. 2015) (a patent

7

defendant "infringed when it used what [it] called a 'simulator,' notably, when it used a computer to practice the same methods it eventually implemented in its MNP/EMNP and NLD chips."). Thus, Dr. Kowalski's testimony that the 2013 simulation met/simulated every limitation from the '703 and '651 patents' independent claims and that "the Collision simulation simulated the '651 and '703 Patents" necessarily means he opined to the Jury that the 2013 simulation practices the '703 and '651 patents. A multitude of issues follow that result, each of which warrants a new trial.

This testimony directly contradicts the Court's specific order and instruction that Dr. Kowalski testify that the 2013 simulation does not practice the '703 and '651 patents. The specific language of the Court's order is critical here. The Court ordered Dr. Kowalski to "***make it clear*** that in his opinion the simulation does not practice the patents." PTC Tr. Vol. 2 at 276:17-277:13 (emphasis added). While Dr. Kowalski originally testified in a single conclusory sentence that the 2013 simulation did not practice the '703 and '651 patents, he spent far more time mapping every limitation of the asserted independent claims to the simulation, and directly confirmed he opined that the simulation practices (or "simulates") the '703 and '651 patents. Tr. at 501:16-503:17.

Collision and its lawyers did not stop flouting the Court's order there. On cross-examination, Collision's counsel roundly mocked Samsung's technical expert, Dr. Mahon, for not having reviewed the simulation source code. Tr. at 1011:22-1018:15. Indeed, Collision's counsel went so far as to suggest Dr. Mahon lied in his expert report about the simulation code at issue. *Id.* Collision's counsel, of course, knew exactly why Dr. Mahon did not review the simulation code: because Collision had ***expressly disclaimed*** any intent to rely on the idea that the simulation practiced the patents ***"for any purpose***." Making matters yet worse, Dr. Kowalski's trial testimony also directly conflicts with the very argument Collision's counsel made at the pre-trial conference. At the PTC, Collision sought to distinguish the 2013 simulation from *Marvell* by claiming that the simulation did not meet the "a data stream from a source" limitation, arguing that "[Dr. Kowalski]

8

was clear that" the simulation does not "actually [have] multiple users" and that therefore this "limitation **is not met**." PTC Tr. Vol. 1 at 221:3-20. Yet, at trial, Dr. Kowalski testified the opposite. Tr. at 501:20-502:1 ("Q. Did Collision's simulation simulate the first limitation of the '651 Patent claim 1? A. Yes. Q. And **does it show** in the source code here from JX 64 **simulating a number of users**? A. That's right…"); *Id*. at 502:16-502:19 ("Q. For the same reasons you explained before, did the Collision simulations simulate the first part of claim 1 of the '703 Patent? A. Correct."). There was never any testimony that any limitation, including "multiple users," were not met by the 2013 simulation. *Id*. at 501:16-503:17. The doctrine of judicial estoppel bars Collision from reversing a previously-taken position that the Court "necessarily adopted, and relied on." *Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 836 (5th Cir. 2000). That is the case here.

Though the history of the simulation's role in this case is lengthy and complex, the overall story is as clear as it has been from the beginning. Collision tried to ambush Samsung with an undisclosed (indeed, expressly disclaimed) damages theory based on the 2013 simulation, and got caught. To avoid the implications of getting caught, Collision said what it needed to the Court at the time, claiming that the 2013 simulation does not practice the asserted patents and thus did not need to be disclosed. But, having cleared the *Daubert* hurdle based on that representation, Collision and Dr. Kowalski got in front of the Jury and went right back to the position that their apportionment theory of the case hinges on—the 2013 simulation **does** practice the asserted patents. Collision thus runs right back into the same issues Samsung raised in its motion to exclude Dr. Kowalski. It was improper for an expert and his counsel to take contradictory positions. *See King v. Armstrong World Indus., Inc.*, 906 F.2d 1022, 1025 (5th Cir. 1990) ("A party is bound by the acts of his attorney[.]"). The position Collision's attorneys took at the pretrial conference that the simulation **does not** practice any of the asserted patents is flatly contradicted by Dr. Kowalski's testimony, elicited by Collision attorneys, that the 2013 simulation "simulated the '651 and '703

9

Patents." *See Marvell*, 807 F.3d at 1296. Dr. Kowalski's admission also means that because the 2013 simulation "simulated the '651 and '703 Patents," and thus met all limitations, it should have been disclosed under P.R. 3-1(f).

The prejudice of allowing Collision to flout the Court's order is clear: it would allow a damages theory that was never disclosed to Samsung, in direct violation of the Patent Local Rules, to net Collision a $445 million windfall. For all the reasons provided herein, if the Court denies Samsung's JMOL on the apportionment issues, it should order a new trial to cure the massive prejudice of Collision presenting evidence that the 2013 simulation practiced any asserted claim. If a new trial is granted, it should be with Dr. Kowalski's entire opinions related to the 2013 simulation struck as they were not properly disclosed under P.R. 3-1(f).

## VI.    COLLISION MADE THE VERY ARGUMENT TO THE JURY IT TOLD THE COURT AT CLAIM CONSTRUCTION IT WOULD NOT MAKE

### A.    The Court's Claim Constructions Were Premised On Collision's Promise That External Applications Are Not Sources to Avoid Indefiniteness Finding

During the original claim construction process for the term "multiple users," the parties offered competing constructions.[3] Dkt. 171 at 12. As the Court noted in the later Supplemental Claim Construction Order, "[a]t one point during the [Markman] hearing, Samsung expressed concern that Collision's construction was untethered from the actual application of multi-user detection." *See* Dkt. 269 ("2nd CC Order") (citing Dkt. 102 ("Markman Tr.") at 27 ("asking whether a 'source' might be an application like Facebook or a video camera, and whether if two or more such 'sources' combined into one bit stream would, under Collision's construction, be considered 'multiuser' transmission")). The Court shared Samsung's concern that under Collision's construction, "Pandora's box has been thrown open and sources can come from

---

[3]    Samsung retains all rights to appeal any claim construction ruling for any reason.

anywhere and nobody knows what they are and everything is going to be indefinite." Dkt. 102 (Markman Tr.) 32:20-25. The Court noted that Collision "quelled that concern" by confirming Collision would not argue that the "source" could be data from a website or application like Facebook. Dkt. 269 at 10 n.2; Dkt. 102 at 33:20-35:11. The Court issued its first claim construction order days before summary judgment reply briefs were due, construing "multiple users" as "sources emanating from devices," plural. Dkt. 171 ("1st CC Order") at 16. The Court's construction was consistent with Samsung's construction and doomed Collision's infringement read. Samsung pointed out as much in its summary judgment reply brief, noting that "Collision's SU-MIMO infringement read for the '703 and '651 patents involved a single handset communicating with a single base station." Dkt. 191 at 1.

Collision all but admitted the Court's construction would gut its infringement case, filing a motion for "clarification" that in fact sought reconsideration of the Court's order. Dkt. 202. The parties argued the motion on the first day of the pretrial conference, with Collision pleading with the Court from the outset of its argument that it needed a new construction from the Court for its case to survive: "This is an extraordinarily important motion to Collision, to our client and to us." PTC Tr. Vol. 1 at 18:6-9. Because the issue of indefiniteness still loomed, Collision's counsel doubled down on his prior statements that Collision would not argue the "source" of the sent data could come from "Facebook" or anything else behind the base station device. *Id.* at 22:16-26:12.

After the hearing, the Court issued its Supplemental Claim Construction Order, and re-construed "multiple users" as "multiple sources of digital data streams for transmission." Dkt. 269 at 12. The Court justified this broadened new construction by specifically citing Collision's representation regarding the applicable scope of "sources," and noting " the source ***cannot be just any source*** of a data stream." Dkt. 269 at 12 (emphasis added); *id*. at 10 n.2. The Court further explained that "the generated data stream must be provided by transmission over the

11

communications medium." *Id*. at 12.  The Court's construction, and all of its reasoning, took Collision's representation about the scope of "sources" and made clear that the "sources" in the "multiple users" construction could not come from just any source, like a website or application.

Separate from the indefiniteness issue, the Court originally deferred hearing Samsung's MSJ of non-infringement pending the resolution of the re-raised claim construction issue.  PTC Tr. Vol. 1 at 107:19-22.  Then, after issuing the Supplemental Claim Construction order, the Court summarily denied Samsung's MSJ of non-infringement related to the "multiple users" term without any argument or reasoning.  PTC Tr. Vol. 2 at 276:10-16.  But even the new construction did not save Collision's infringement read, as Collision effectively admitted when it moved to supplement Dr. Kowalski's infringement report in light of the new construction—a motion which would not have been necessary otherwise.  Dkt. 280.  Samsung opposed and explained that Dr. Kowalski's supplement was an improper new opinion, and that what Collision and Dr. Kowalski were now arguing was still foreclosed by the Court's second construction.  Dkt. 282.  The Court rejected both arguments, further re-interpreting its own second claim construction order reasoning, essentially rendering a third claim construction order, to yet again allow Collision's infringement case to proceed, but still with the understanding of Collision's stated "sources" position.  Dkt. 286.

This shifting sands approach to claim construction long after the close of both fact and expert discovery also prejudiced Samsung apart from Collision's counsel's failure to follow its prior representations.  The multiple changes in a key claim term—and changes in Collision's infringement theories—in the months leading up to trial prevented Samsung from fully developing its defenses under the operable construction—the very situation the local rules are designed to prevent.  *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (The purpose of the rules is to "require parties to crystallize their theories of the case early in the litigation so as to prevent the 'shifting sands' approach to claim construction."); *Cummins-*

*Allison Corp. v. SBM Co., Ltd.*, 2009 WL 763926, at \*1 (E.D. Tex. Mar. 19, 2009) ("the purpose of the Local Patent Rules is to 'further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to…practice litigation by ambush'").  A new trial is necessary to correct this manifest injustice.

### B.    Collision Argued At Trial That "Sources" Can Be Anything

On direct examination regarding his infringement opinion of Claim 1 of the '703 patent, Dr. Kowalski testified that "the data stream for multiple users" was met by "the data stream that arrives [at the Samsung Accused Products] from each of the MIMO layers" transmitted by the base station and that "the multiple sources of digital data streams for transmission" were met by "the MIMO layers."  Tr. (Kowalski) at 473:23-474:14.  Thus, ***Dr. Kowalski testified on direct that the claimed "multiple sources of digital data streams" were "the MIMO layers."***

Then, on cross, Dr. Kowalski was forced to admit that he had previously testified under oath that there is only ***one*** source of the digital data streams, not multiple, from what Dr. Kowalski referred to as the "core network," further upstream from the base station that transmits the MIMO layers: "***The source of the data*** may be one or more data streams that are transmitted from some source that -- that as far as what we're talking about here, ***comes from the core network to the base station***…."  Tr. (Kowalski) at 638:11-640:11.  Thus, Dr. Kowalski admitted it was his opinion that the actual "multiple sources of digital data streams" was in fact ***not*** the MIMO layers, but instead the singular "core network" behind the base station.  This singular "core network" cannot possibly meet the Court's construction of "multiple users" of "***multiple sources*** of digital data streams for transmission."  Dkt. 269 at 12 (emphasis added).[4]

---

[4]  Dr. Kowalski also admitted during cross-examination that MIMO layers are merely "a spatial dimension."  Tr. at 637:16-22.  "A spatial dimension" is not the source of any data.

In its closing argument, Samsung challenged Dr. Kowalski's ability to identify the sources of data. Collision responded in its rebuttal argument, which Samsung had no opportunity to respond to, attempting to explain away Dr. Kowalski's admission:

> And so the way counsel tries to make him look like he's not consistent is what they're highlighting. What Dr. Kowalski said is, "The source of the data may be one or more datastreams that are transmitted." And then he goes on to say those datastreams *may have come from a source out on the internet*. So the sources he points to as the MIMO layers are the exact datastreams that are perfectly consistent with his theory, *but of course the data the base station is sending to you if you're watching a Netflix movie, that data ultimately came further upstream from Netflix*.

Tr. at 1293:14-24 (emphasis added). The most one can say in Collision's defense is that it changed the "source" example from Facebook to Netflix. Other than that, Collision's counsel did exactly what he said he would not do to avoid the indefiniteness issue, arguing the "source" of the digital data could be an application like Netflix (or, by the same logic, Facebook). Just like the simulation issue, Collision's counsel made one representation to the Court during pre-trial to keep the case advancing in its favor but then argued the diametrically opposite position at trial when the prior position would have harmed Collision's jury presentation. And just like the simulation issue, judicial estoppel—a doctrine that "applies to protect the integrity of the courts" by "preventing a litigant from contradicting its previous, inconsistent position when a court has adopted and relied on it"—prevents Collision from doing so. *Ahrens*, 205 F.3d at 833 (quotation omitted). This major shift on a critical issue that underlies the Court's claim construction warrants a new trial.

## VII. COLLISION MISREPRESENTED THE COURT'S SIDEBAR RULING

Prior to trial, Collision had moved in summary judgement to exclude Samsung's written description and enablement arguments, which the Court properly rejected. PTC Tr. Vol. 1 at 147:19-148:11. Then at trial, when Samsung's expert Dr. Mahon was presenting his written description and enablement opinions regarding the '703 and '651 patents, Collision objected to the

14

testimony where Dr. Mahon was explaining that those two patents did not have written description for claims that covered MIMO technology.  Tr. at 954:9-21.  After argument, the Court ruled, at sidebar and outside of Dr. Mahon's or anyone else's hearing, that "it does appear to the Court that this witness is straying from a comparison of the specification to the accused products, and that's what the comparison for written description, enablement needs to be.  So I'm going to sustain Mr. Caldwell's objection." *Id*. at 956:13-17.  That was the extent of the Court's ruling.[5]

However, on cross examination, counsel for Collision misrepresented the Court's ruling to Dr. Mahon.  *Id*. at 1042:23-1043:12.  Dr. Mahon is not a lawyer, and like any well-meaning expert, Dr. Mahon did not want to violate any Court order or direction.  Collision's counsel preyed on all of this to improperly confuse Dr. Mahon into confusing testimony in front of the Jury that Dr. Mahon had no written description opinion following the Court's sidebar ruling.  With the time constraints of the trial, Samsung did not have time to readdress this issue with Dr. Mahon.  This testimony could easily have been interpreted by the Jury into finding no invalidity based on the incorrect premise Dr. Mahon had no written description (invalidity) opinion, creating significant prejudice to Samsung and warranting a new trial.  Nor was counsel's implication correct—despite counsel's misrepresentations, Dr. Mahon ***did*** present a written description theory to the Jury.  Tr. at 951:22-954:12, 960:12-19.  He was simply misled about the meaning of the Court's order.

## VIII.  CONCLUSION

For the foregoing reasons, Samsung respectfully requests that the Court grant a new trial on all issues, and alternatively a new trial on damages.

---

[5]  Samsung maintains its objection to the Court's ruling.  As shown by Samsung's proffer filed on the issue, Samsung had a significant and detailed written description and enablement argument it was prepared to make.  Dkt. 311.

███████████████████████████

Dated:  December 10, 2025

Respectfully submitted,

/s/ Melissa R. Smith
Victoria F. Maroulis
California Bar No. 202603 (admitted in E.D. Tex.)
victoriamaroulis@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel : 650-801-5000
Fax: 650-801-5100s

Sean Pak
California Bar No. 219032 (admitted *pro hac vice*)
seanpak@quinnemanuel.com
Brian E. Mack
California Bar No. 275086 (admitted in E.D. Tex.)
brianmack@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700

Kevin Hardy
D.C. Bar No. 473941 (admitted in E.D. Tex.)
kevinhardy@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
1300 I Street, N.W., Suite 900
Washington, DC 20005
Tel: 202.538.8000
Fax: 202.538.8100

Melissa R. Smith
Texas State Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Phone: (903) 934-8450
Fax: (903) 934-9257
*Counsel for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc*

16

████████████████████████████

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on December 10, 2025, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

Dated: December 10, 2025        */s/ Melissa R. Smith*
                                Melissa R. Smith

17