■

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF TEXAS

## MARSHALL DIVISION

| | |
|---|---|
| COLLISION COMMUNICATIONS, INC., | |
| *Plaintiff*, | Case No. 2:23-cv-00587-JRG |
| v. | **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., | **ORAL ARGUMENT REQUESTED** |
| *Defendants*. | |

## SAMSUNG'S OPPOSITION TO PLAINTIFF'S
## MOTION FOR PERMANENT INJUNCTION

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    EBAY STILL GOVERNS PERMANENT INJUNCTIONS IN PATENT CASES ...........1

 A.    The Supreme Court And Federal Circuit Prohibit Presumptive Permanent Injunctions.................................................................................................1

 B.    The Federal Circuit Just Rejected The Argument That English History Requires Presumptive Permanent Injunctions .........................................2

 C.    Collision Makes The Same Argument For Presumptive Permanent Injunctions.................................................................................................3

 D.    English History Does Not Entitle Collision To A Presumption In Favor Of Injunctive Relief.................................................................................6

II.    COLLISION FAILS TO SATISFY ANY OF THE FOUR PERMANENT INJUNCTION FACTORS ........................................................................9

 A.    Collision Fails To Show Irreparable Harm .........................................10

 B.    Money Damages Are Adequate ............................................................15

 C.    The Balance Of Hardships Favors Samsung .......................................16

 D.    The Public Interest Does Not Favor A Permanent Injunction .............18

III.    CONCLUSION.......................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012)...................................................................2, 10, 11, 12, 14, 19

*Apple, Inc. v. Motorola, Inc.*,
869 F.Supp.2d 901 (N.D. Ill. 2012), *rev'd on other grounds*, 757 F.3d 1286
(Fed. Cir. 2014) ...........................................................................................................................18

*Apple, Inc. v. Samsung Elecs. Co.*,
678 F.3d 1314 (Fed. Cir. 2012).............................................................................................14, 15

*Atari Games Corp. v. Nintendo of Am., Inc.*,
897 F.2d 1572 (Fed. Cir. 1990)....................................................................................................13

*BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Organisation*,
2019 WL 8108116 (E.D. Va. Dec. 23, 2019), *rev'd on other grounds*, 28 F.4th
1247 (Fed. Cir. 2022).............................................................................................................18, 20

*Bianco v. Globus Med., Inc.*,
2014 WL 1049067 (E.D. Tex. Mar. 17, 2014) .............................................................10, 11

*Bright Data Ltd. v. Teso LT, UAB*,
584 F.Supp.3d 193 (E.D. Tex. 2022) ..............................................................................2, 16

*Broadcom Corp. v. Emulex Corp.*,
732 F.3d 1325 (Fed. Cir. 2013)....................................................................................................13

*Broadcom Corp. v. Qualcomm Inc.*,
543 F.3d 683 (Fed. Cir. 2008).....................................................................................................13

*California Inst. of Tech. v. Broadcom Ltd.*,
2020 WL 10054680 (C.D. Cal. July 17, 2020), *aff'd in relevant part, vacated
in part, remanded*, 25 F.4th 976 (Fed. Cir. 2022).....................................................................16

*Centripetal Networks, Inc. v. Cisco Sys., Inc.*,
492 F.Supp.3d 495 (E.D. Va. 2020), *rev'd on other grounds*, 38 F.4th 1025
(Fed. Cir. 2022)........................................................................................................................18, 20

*Conceptus, Inc. v. Hologic, Inc.*,
2012 WL 44064 (N.D. Cal. Jan. 9, 2012) .................................................................17, 18, 20

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)..............................................1, 2, 3, 4, 5, 6, 7, 9, 10, 12, 16

*Fractus, S.A. v. Samsung Elecs. Co.*,
  876 F.Supp.2d 802 (E.D. Tex. 2012)....................................9, 10, 12, 16, 18, 19, 20

*Genband US LLC v. Metaswitch Networks Ltd*,
  211 F.Supp.3d 858 (E.D. Tex. 2016) ............................................................14, 15

*Genband US LLC v. Metaswitch Networks Corp.*,
  861 F.3d 1378 (Fed. Cir. 2017)....................................................................14, 15

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010)...........................................................................12

*Johnson & Johnson Vision Care, Inc., v. CIBA Vision Corp.*,
  712 F.Supp.2d 1285 (M.D. Fla. 2010) ..........................................................18, 20

*Laserdynamics, Inc. v. Quanta Computer, Inc.*,
  2010 WL 2574059 (E.D. Tex. June 22, 2010).........................10, 11, 12, 15, 16, 19

*McConihay v. Wright*,
  121 U.S. 201 (1887)............................................................................................9

*MercExchange, LLC v. eBay, Inc.*,
  401 F.3d 1323 (Fed. Cir. 2005).............................................................................1

*Murthy v. Missouri*,
  603 U.S. 43 (2024)............................................................................................12

*Nichia Corp. v. Everlight Americas, Inc.*,
  855 F.3d 1328 (Fed. Cir. 2017).....................................................2, 10, 11, 12, 14

*Paice LLC v. Toyota Motor Corp.*,
  504 F.3d 1293 (Fed. Cir. 2007)............................................................................8

*Richardson v. Suzuki Motor Co.*,
  868 F.2d 1226 (Fed. Cir. 1989).............................................................................1

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
  659 F.3d 1142 (Fed. Cir. 2011)...............................................................2, 3, 5, 7

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,
  490 U.S. 477 (1989)............................................................................................5

*Shalala v. Illinois Council on Long Term Care, Inc.*,
  529 U.S. 1 (2000)...............................................................................................6

*Tinnus Enters., LLC v. Telebrands Corp.*,
   846 F.3d 1190 (Fed. Cir. 2017)...........................................................................10

*Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*,
   750 F.2d 1552 (Fed. Cir. 1984).............................................................................8

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025)..........................................................................................4, 7

*United States v. Apple, Inc.*,
   2:24-cv-04055 (D.N.J. Mar. 21, 2024), Dkt. No. 1 ...........................................19

*VidStream LLC v. Twitter, Inc.*,
   2024 WL 4820802 (Fed. Cir. Nov. 19, 2024)....................................................2, 3

*Westinghouse Air Brake Techs. Corp. v. Siemens Indus., Inc.*,
   2018 WL 3655782 (D. Del. Aug. 2, 2018) ...................................................18, 20

## Other Authorities

H. Tomás Gómez-Arostegui & Sean Bottomley, *The Traditional Burdens for
   Final Injunctions in Patent Cases C.1789 and Some Modern Implications*, 71
   Case W. Res. L. Rev. 403, 407 (2020) ..................................................................7

Kif Leswing, *Samsung taking market share from Apple in U.S. as foldable phones
   gain momentum*, CNBC (Aug. 16, 2025, 4:50 p.m.),
   https://www.cnbc.com/2025/08/16/samsungs-us-market-share-apple-rivalry-
   foldable-phones.html .....................................................................................17, 19

*Samsung Electronics*, World Economic Forum,
   https://www.weforum.org/organizations/samsung-electronics/ (last visited
   Dec. 29, 2025)......................................................................................................17

Collision's motion is an extraordinary one. Collision—a non-practicing entity already sitting on a nearly half-billion dollar verdict—asks the Court to enjoin Samsung, the second largest smartphone provider in the United States, from selling smartphones to U.S. customers based on the alleged infringement of the '492 patent for the remaining life of that patent. Collision's demand for this unprecedented relief rests on Collision's contention that the Supreme Court overturned the entire existing body of caselaw governing permanent injunctions in patent-infringement lawsuits, including its own seminal case on the issue, without saying it was doing so in a case having nothing to do with patent infringement. The Supreme Court, of course, did no such thing. *eBay* and the Federal Circuit cases applying it remain good law, and they govern Collision's motion. With the correct legal standard in mind, Collision's motion fails. It has suffered no irreparable harm; any harm it has suffered can be addressed with monetary damages; and neither the balance of hardships nor the public interest favors wiping out over a quarter of the U.S. smartphone market based on one patent a non-practicing entity bought from a third party. Collision's motion should be denied.

## I. EBAY STILL GOVERNS PERMANENT INJUNCTIONS IN PATENT CASES

### A. The Supreme Court And Federal Circuit Prohibit Presumptive Permanent Injunctions

Before 2006, the Federal Circuit had held that, in patent cases, "the general rule [was] that a permanent injunction will issue once infringement and validity have been adjudged," and "courts [would] issue permanent injunctions against patent infringement absent exceptional circumstances." *MercExchange, LLC v. eBay, Inc.*, 401 F.3d 1323, 1338-39 (Fed. Cir. 2005) (citing *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1246-47 (Fed. Cir. 1989)).

In 2006, the Supreme Court expressly rejected this "general rule." In *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393-94 (2006), the Court found that the Federal Circuit's presumption in favor of permanent injunctions departed from "traditional principles of equity:"

Those principles allow courts to exercise "considerable discretion" in devising equitable relief, and the Federal Circuit's presumption that injunctions should be granted in patent cases was inconsistent with that discretion. *Id.* Instead of a presumption in favor of permanent injunctive relief following a finding of patent infringement, the Court re-emphasized that a patent plaintiff seeking a permanent injunction must make the same showing as any other plaintiff seeking such an injunction: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* at 391. "Nothing in the Patent Act indicates" that Congress intended otherwise. *Id.* at 391-92.

Ever since, the Federal Circuit and this Court have faithfully applied the Supreme Court's holding in *eBay*, and have relied on the traditional four-factor test in determining whether to issue a permanent injunction following a finding of patent infringement. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1337 (Fed. Cir. 2012); *Nichia Corp. v. Everlight Americas, Inc.*, 855 F.3d 1328, 1341 (Fed. Cir. 2017); *Bright Data Ltd. v. Teso LT, UAB*, 584 F.Supp.3d 193, 196 (E.D. Tex. 2022). Indeed, the Federal Circuit has explicitly found that "*eBay* jettisoned the presumption of irreparable harm as it applies to determining the appropriateness of injunctive relief." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011). Collision's motion ignores this clear precedent.

### B.    The Federal Circuit Just Rejected The Argument That English History Requires Presumptive Permanent Injunctions

Late last year, the Federal Circuit rejected the same argument to reinstate that presumption that Collision makes here. In *VidStream LLC v. Twitter, Inc.*, 2024 WL 4820802, at *1 (Fed. Cir. Nov. 19, 2024), VidStream argued that Judge Godbey erred in denying a permanent injunction

following a finding of patent infringement: "[Judge Godbey] simply had no discretion to require additional harm beyond ongoing infringement," because "[a]ccording to the principles administered by the Court of Chancery at the founding, the likelihood of ongoing infringement itself constituted irreparable injury." *Id.* This is substantively the same argument Collision makes in the instant motion.

The Federal Circuit summarily rejected it:

> VidStream's argument **clearly runs afoul** of the Supreme Court's decision in [*eBay*, 547 U.S. at 393], which rejected such a "broad" and "categorical rule" in deciding motions for injunctive relief in the context of patent infringement. *See* [*Robert Bosch*, 659 F.3d at 1149] (confirming "that eBay jettisoned the presumption of irreparable harm" and "abolishe[d] our general rule that an injunction normally will issue when a patent is found to have been valid and infringed").

*VidStream LLC*, 2024 WL 4820802, at *1 (emphasis added).

Collision addresses the Federal Circuit's order in *VidStream LLC* only by noting that it was short and nonprecedential. Mot. at 14. So it was: It did not take many words for the Federal Circuit to explain that VidStream's argument was squarely foreclosed by binding Supreme Court precedent: "Given that VidStream's only challenge . . . raises no substantial question regarding the outcome of the appeal under governing Supreme Court precedent, the court affirms, and finds it appropriate to do so by summary order." 2024 WL 4820802, at *1. VidStream did not seek en banc review.

### C.    Collision Makes The Same Argument For Presumptive Permanent Injunctions

Undaunted by the Federal Circuit's summary rejection of this argument in *VidStream LLC*, Collision now makes the same failed argument to this Court. Presenting highly selective documents from English legal history, Collision asks this Court to apply a presumption that following an infringement verdict, a permanent injunction should issue. Mot. at 3-14.

To attempt to establish changed legal circumstances since the Federal Circuit's quick rejection of this argument, Collision claims that the rejection of any presumption in *eBay* and the Federal Circuit opinions applying *eBay* has been overturned by the Supreme Court's opinion in *Trump v. CASA, Inc.*, 606 U.S. 831, 841 (2025) ("*CASA*"), a case that had nothing to do with patent law, did not endorse any presumption, and did not mention *eBay*. Mot. at 12-14 (arguing that "the Federal Circuit's post-*eBay* cases cannot survive *Trump v. CASA*").

That is an extreme misreading of *CASA*, which arose from appeals of nationwide preliminary injunctions issued against enforcement of an executive order issued by the President. *See* 606 U.S. at 838-39. The executive order at issue purported to define conditions under which persons born in the United States would not be recognized as United States citizens. *Id.* Multiple district courts issued preliminary injunctions prohibiting enforcement of the order. Without addressing the merits of the order, *see id.* at 859-60, the Supreme Court held that the district courts did not have the authority to issue the nationwide preliminary injunctions in question, but rather could grant relief only to the specific parties in the lawsuit with standing to sue. *Id.* at 837-38, 861. The Court accordingly stayed the district courts' preliminary injunctions to the extent that they were broader than what was necessary to provide relief to the plaintiffs with standing to sue. The case had no bearing on the requirements to obtain permanent injunctions in favor of prevailing plaintiffs for adjudicated patent infringement.

Collision nonetheless asserts that *CASA* fundamentally changed the law regarding permanent injunctions in patent cases after a finding of infringement and reinstated the presumption that the Supreme Court expressly overturned in *eBay*. That claim rests on the fact that *CASA* cited the black-letter law that traditional principles of equity govern the issuance of permanent injunctions. *See* Mot. at 12-14. Collision writes off *VidStream LLC* by claiming that, before *CASA*, "it was perhaps less clear that the historical approach to federal equity is the

governing approach." Mot. at 14.

That argument is unfounded. *CASA* changed nothing about permanent injunctions in patent cases. Justice Thomas, writing the *eBay* opinion, rejected the presumption Collision now seeks to revive because it was "a major departure from the long tradition of equity practice," because "traditional equitable considerations" precluded automatic injunctions, because the Federal Circuit's presumption failed to apply "traditional equitable principles," and because district courts must exercise their discretion "consistent with traditional principles of equity, in patent disputes no less than in other cases." 547 U.S. at 392-94. The Federal Circuit cases applying *eBay* have similarly noted that *eBay*, in "jettison[ing] the presumption of irreparable harm as it applies to determining the appropriateness of injunctive relief," relied on "traditional equitable principles." *Robert Bosch*, 659 F.3d at 1148-49. *eBay* and its progeny thus stand for the proposition that the Federal Circuit's prior presumption of irreparable harm in patent cases is ***inconsistent with*** traditional principles of equity. Collision's argument that *CASA* somehow re-centered those principles, in ways that overturned all of the Federal Circuit's post-*eBay* injunction jurisprudence, ignores all of this. *eBay* is clear that the historical approach requires the application of the full four-factor test in patent cases, and that "a successful patent infringement plaintiff can no longer rely on presumptions or other short-cuts to support a request for a permanent injunction[.]" *Robert Bosch*, 659 F.3d at 1149.

In any event, unless and until the Supreme Court clearly says otherwise, *eBay* and the Federal Circuit cases applying it are good law and govern Collision's motion. "If a precedent of [the Supreme] Court has direct application in a case," as *eBay* does here, "yet appears to rest on reasons rejected in some other line of decisions," as Collision argues is the case, "the Court of Appeals should follow the case which directly controls, leaving to [the Supreme Court] the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490

U.S. 477, 484 (1989); *see also Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000) ("This Court does not normally overturn, or so dramatically limit, earlier authority sub silentio."). Because the Supreme Court and Federal Circuit prohibit the presumption in favor of injunctive relief that Collision seeks, Collision's argument must be rejected.

> ### D.   English History Does Not Entitle Collision To A Presumption In Favor Of Injunctive Relief

Even if the Court finds that Collision's English history is relevant to this motion, that history does not show that Collision is entitled to a presumption of injunctive relief in patent cases.

> #### 1.   Collision Seeks Presumptive Injunctive Relief, Contrary To *eBay*

Collision's arguments obscure the fact that it seeks to reinstate precisely the presumption that *eBay* rejected. Collision claims that "under traditional principles of equity, injunctive relief should be ordinary relief in patent infringement cases in U.S. federal courts today." Mot. at 5. Later, Collision argues that its English history shows that in patent cases, ongoing infringement is per se irreparable harm, that the legal remedy is per se inadequate in patent infringement cases, and that a defendant's hardship is per se immaterial. Mot. at 6. That may sound familiar: It is the exact "general rule," rejected in *eBay*, that a permanent injunction will issue following an infringement finding. *See* 547 U.S. at 393-94. Collision responds: "'Ordinary' does not mean automatic. Injunctions could still be denied for public interest reasons or because of an equitable defense . . . ." Mot. at 5. Again, that is familiar: The *eBay* Court rejected the Federal Circuit's presumption of injunctive relief even though the presumption allowed for denial of injunctive relief "to protect the public interest." 547 U.S. at 393-94. Collision's reading of English history ignores *eBay*, and effectively eliminates three of the four permanent injunction factors that the Supreme Court held must be considered. *See* Mot. at 6. Collision cannot save its presumption by labeling it "ordinary" and not "automatic": the Federal Circuit has expressly held that not even a "rebuttable

presumption of irreparable harm" can survive *eBay*. *Robert Bosch*, 659 F.3d at 1148-49.

Collision also claims a presumption of injunctive relief from the "continuing-violations doctrine." Mot. at 9-11. Collision argues that "nothing in *eBay* prohibits courts from concluding that certain categories of torts are irreparable harm as a matter of law." *Id.* at 10. That is true. But *eBay* did prohibit courts from concluding that *this category* of tort, patent infringement, is irreparable harm as a matter of law.

### 2.    Collision's English History Does Not Show That This Court Should Apply A Presumption Of Permanent Injunctive Relief

Collision is right that federal courts exercise the equitable powers that the Court of Chancery in England did in 1789, unless those powers are altered by Congress. *See CASA*, 606 U.S. at 841; Mot. at 2-3. But Collision's evidence of English practice does not show, as Collision claims, that the Court can simply ignore three of the four factors the Supreme Court held were relevant in *eBay*. Rather, while the history of English Chancery practice is informative, it cannot replace the factual analysis that attends "[t]he equitable discretion over injunctions[] granted by the Patent Act." *eBay*, 547 U.S. at 397 (Kennedy, J. concurring).

First, Collision claims that "it is a traditional principle of equity that ongoing patent infringement is irreparable harm." Mot. at 6. But Collision's own source belies that claim: At Chancery, "patentees faced no separately articulated requirement of demonstrating 'irreparable' injury. Irreparable harm was an inquiry that played a role, if at all, on requests for interim injunctions and it concerned, in part, whether an alternative equitable remedy would suffice instead. No similar inquiry occurred at the final-injunction stage." H. Tomás Gómez-Arostegui & Sean Bottomley, *The Traditional Burdens for Final Injunctions in Patent Cases C.1789 and Some Modern Implications*, 71 Case W. Res. L. Rev. 403, 407 (2020) ("*Traditional Burdens*," *see* Mot. 6, 9, 12, 13, 15).

7

Second, Collision claims that "it is a traditional principle of equity that the remedies at law are inadequate in patent- and copyright-infringement cases." Mot. at 6. But at Chancery, the legal remedy for patent infringement was deficient because it "was limited to torts occurring *before* the action commenced." *Traditional Burdens* at 422. "Common-law courts could not award damages for infringements that occurred after the action commenced, let alone infringements expected to occur after judgment." *Id.* It is natural that Collision's scholars "never encountered a case that denied a final injunction on the ground that the successful patentee had an adequate remedy at law," because in 1789, there *was no* adequate remedy at law. *See* Mot. at 13, citing *Traditional Burdens* at 414, 429. But here, Collision already has an adequate remedy at law under the patent laws—a nearly half-billion dollar verdict.

Patent practice is different today. Relying on the Patent Act, the Federal Circuit holds that "awarding an ongoing royalty for patent infringement in lieu of an injunction may be appropriate." *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007). The Federal Circuit also approves of damages that reflect *future* use of the patent by the defendant. *See Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1565 (Fed. Cir. 1984) ("Where the damage award is based upon an assumed license for the life of the patent, there is no need to enjoin use, since the license fee authorizes use."). Collision is aware that courts award royalties for injuries occurring after trial verdicts in patent cases: it asks this Court to award them here. *See* Dkt. 343 at 5.

Although money damages for future injury were non-existent, and thus inadequate, at Chancery, they exist and are adequate today. So Chancery's presumption of inadequacy does not apply. Collision argues that whether there is an adequate remedy at law depends on what remedy existed in 1789, except insofar as Congress has changed the remedies. Mot. at 3. But Congress has done just that: the Federal Circuit's ability to award prospective relief comes from the Patent Act. *See Paice*, 504 F.3d at 1314. Collision admits that when Congress "subsequently change[s]"

8

the legal remedies available for an alleged wrong, legal remedies may be adequate when they would not have been before.  *See* Mot. at 3 (quoting *McConihay v. Wright*, 121 U.S. 201, 206 (1887)).  Collision's argument collapses under the weight of this (correct) admission.

Finally, Collision argues that in 1789, "a defendant's hardship in complying with a *permanent* injunction was immaterial."  But Collision's cited authority, *Traditional Burdens* at 430-31, relies on the case Collision cites for a similar proposition, and no others.  Meanwhile, that authority acknowledges a different case "where a defendant's hardship affected a decree," in which Chancery modified a seizure order to permit a defendant to transport infringing books to a place where they could be sold legally.  *Id.* at 431.  At best Collision has cited two cases reaching opposite conclusions on whether a defendant's hardship is material.  Such limited and conflicting Founding-era authority does not provide any basis to depart from the mandatory traditional rule that the defendant's hardship is considered in granting permanent injunctions—much less a basis to ignore Supreme Court precedent.  *See eBay*, 547 U.S. at 391.

Therefore, even if English legal history is considered, Collision's argument fails and this Court should apply the Federal Circuit's precedents on determining the propriety of permanent injunctions in patent cases, and not Collision's presumptions in favor of injunctions.

## II.    COLLISION FAILS TO SATISFY ANY OF THE FOUR PERMANENT INJUNCTION FACTORS

"In determining whether to issue a permanent injunction in patent cases, courts apply the four factor test provided for in [*eBay*].  *Fractus, S.A. v. Samsung Elecs. Co.*, 876 F.Supp.2d 802, 852 (E.D. Tex. 2012).  "A party is entitled to a permanent injunction only if: '(1) [the party] has suffered an irreparable injury; (2) that remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the [parties], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a

permanent injunction.'" *Id.* at 852 (quoting *eBay*, 547 U.S. at 391). And "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts[.]" *Id.* at 852-53 (quoting *eBay*, 547 U.S. at 391). The Federal Circuit reviews the grant of injunctive relief "using the law of the regional circuit—here, the Fifth Circuit[.]" *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1203 (Fed. Cir. 2017) (reviewing a preliminary injunction).

### A. Collision Fails To Show Irreparable Harm

#### 1. Collision Is A Non-Practicing Entity That Sought Monetary Compensation

Patent plaintiffs that "fail[] to establish market competition, lost sales, and price erosion" do not suffer irreparable harm. *See Nichia Corp.*, 855 F.3d at 1344. A plaintiff that only licenses its patents, rather than making or selling patent-practicing products, thus does not suffer irreparable harm from any alleged infringement. *Id.* The Federal Circuit has held that, even where a defendant's infringement takes market share from the plaintiff's *licensee* and not the plaintiff itself, "such a loss is certainly not irreparable" because "[w]hether [plaintiff] receives this subscriber fee from [defendant] or from [plaintiff's licensee], it will be adequately compensated." *ActiveVideo Networks, Inc*, 694 F.3d at 1338. Consistent with this clear guidance, this Court and others in this District regularly hold that a non-practicing plaintiff does not suffer irreparable harm when its patents are infringed. *See, e.g., Laserdynamics, Inc. v. Quanta Computer, Inc.*, 2010 WL 2574059, at *2 (E.D. Tex. June 22, 2010) (finding no irreparable harm where plaintiff had "never used [its] patent to develop a product" but had licensed it instead); *Fractus*, 876 F.Supp.2d at 854 (finding no irreparable harm where plaintiff's damages from Samsung's infringement were "limited to [plaintiff's] loss of Samsung as a customer."); *Bianco v. Globus Med., Inc.*, 2014 WL 1049067, at *5 (E.D. Tex. Mar. 17, 2014) (noting that "with only a few exceptions, courts have denied injunctive relief in cases in which the patentee does not practice the patent and compete with the

10

alleged infringer," as where inventors expect to receive licenses from the ultimate manufacturer, "it is sensible to conclude that monetary relief provides full compensation for the inventor and is a proper substitute for the royalty payments the inventor expected to receive.").

Here, it is undisputed that Collision never used its patents to sell products that would compete with Samsung's products in the same markets. Tr. 393:13-19. Its principal goal was to "develop[] solutions that would go into Samsung's products." Tr. 410:21-411:2. To that end, Collision has sought to license its technology, including its patent portfolio. Collision and Samsung negotiated for years over a potential agreement whereby Samsung would implement Collision's MUD technology in Samsung's base station products, and Collision licensed its patents to Ericsson and Nokia for use in base stations. Tr. 368:23-369:13. Collision was a non-practicing licensor whose loss, if any, was not "certainly not irreparable": whether Collision received its license fee from Samsung or from its licensees like Ericsson and Nokia, Collision "will be adequately compensated." *See ActiveVideo Networks*, 694 F.3d at 1338.

And Collision certainly never made, or intended to make, cellular handsets of the type it would later accuse of infringement in this case. Notably, Collision's damages ask was limited to a reasonable royalty—presumably because Collision knew it could not establish market competition, lost sales, or price erosion. Collision has thus effectively admitted that "monetary relief provides full compensation for the royalty payments the inventor expected to receive." *See Bianco*, 2014 WL 1049067, at *5. That admission squarely forecloses its claim to have suffered irreparable harm. *See Nichia*, 855 F.3d at 1344; *ActiveVideo Networks*, 694 F.3d at 1338; *Laserdynamics*, 2010 WL 2574059, at *2.

Collision tries to avoid this obvious result in several ways. First, Collision again misunderstands English legal history in arguing that "[t]he law . . . simply does not permit discrimination against non-practicing patent owners." Mot. at 7. The issue is not "discrimination,"

11

but rather the application of principles of equity. Those principles apply differently in cases where the patent owner is a competitor of the alleged infringer, and thus has lost market share or suffered some other competitive harm from the alleged infringement, as compared to cases (like this one) where the patent owner seeks only to license its patents and thus has lost only royalties. Recognizing this common-sense principle, the Federal Circuit and courts in this District have repeatedly held that non-practicing patent owners who license their patents but do not manufacture products rarely suffer irreparable harm from patent infringement. *See, e.g., Nichia*, 855 F.3d at 1344; *ActiveVideo Networks*, 694 F.3d at 1338; *Laserdynamics*, 2010 WL 2574059, at *2; *Fractus*, 876 F.Supp.2d at 854. Such a patent owner's harm can be remedied with money, and thus by definition is not irreparable. *Id.*

Second, Collision argues that Samsung caused irreparable harm because it "stripped [Collision] of its primary competitive edge in design-wins competitions." Mot. at 16-18. Collision also asserts that absent the accused infringement, Collision would have "enter[ed] co-development agreements with cellular equipment manufacturers like Samsung . . . to adapt and incorporate Collision's software into their base station or handset receiver chips." Mot. at 16. As a factual matter, this is flatly contradicted by Collision's own trial testimony. Jared Fry readily admitted that Collision's non-patent-assertion business failed because **Nokia**, not Samsung, lost interest in collaborating with Collision. Tr. 368:4-22. But even if it were not factually wrong on its face, Collision's "design-wins" argument would not entitle it to a permanent injunction, as an injunction is *forward-looking* relief. Even if Collision lost a "design-win" (which Samsung disputes) and even if Samsung had caused it (which it plainly did not), that loss already happened. While courts *consider* previous harms in evaluating this *eBay* factor, *see i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010), the Supreme Court requires that to receive forward-looking injunctive relief, a plaintiff must show that they will be harmed "in the near future." *Murthy v.*

*Missouri*, 603 U.S. 43, 58 (2024).  "But [where] the plaintiffs are seeking only *forward-looking* relief, the past injuries are relevant only for their predictive value . . . . the past is relevant only insofar as it is a launching pad for a showing of imminent future injury."  *Id.* at 59 (emphasis added).

Collision cannot show any—let alone imminent—future injury here.  As discussed, Collision does not make, or plan to make, any products.  Tr. 393:13-19, 368:7-22 (Jared Fry's testimony that after Nokia canceled its project with Collision, Collision had to "shut down [its] research and development operations.").  Collision has transitioned to a new business model: patent assertion.  *See* Tr. 404:5-22.  Collision cannot show that it will be harmed in the near future by any "design-win" loss caused by Samsung because Collision is not designing any products which Samsung could compete against, and does not plan to.  Collision's assertions that, absent the accused infringement, it would have co-developed products with Samsung are pure speculation, were never found by the jury, and should not be considered.  *See Atari Games Corp. v. Nintendo of Am., Inc.*, 897 F.2d 1572, 1575 (Fed. Cir. 1990) (noting that "a district court should be wary of issuing an injunction based solely upon allegations and conclusory affidavits submitted by plaintiff").

Finally, Collision's reliance on *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1337 (Fed. Cir. 2013), and *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 702 (Fed. Cir. 2008), for the proposition that courts find irreparable harm in "design-win" cases is misplaced.  In both cases, the Federal Circuit noted that the plaintiff competed with the defendant in the same market for goods using the patent.  *Emulex*, 732 F.3d at 1336 ("The district court found that the parties were direct competitors in the relevant product market."); *Qualcomm*, 543 F.3d at 702-03 (finding a design-win loss supported irreparable harm finding because defendant conceded that its chipsets competed with plaintiff's chipsets).  Here, Collision does not compete with Samsung.  Thus, the

Federal Circuit caselaw showing that a non-competitor plaintiff does not suffer irreparable harm controls here.  *See, e.g., Nichia*, 855 F.3d at 1344; *ActiveVideo Networks*, 694 F.3d at 1338.

### 2.    Collision's Delay Undercuts Any Claim of Irreparable Harm

Courts routinely find that plaintiffs who delay seeking relief from claimed patent infringement cannot later claim irreparable harm sufficient for a permanent injunction.  *See Genband US LLC v. Metaswitch Networks Ltd*, 211 F.Supp.3d 858, 895 (E.D. Tex. 2016) (even when laches defense did not apply, finding delay indicative of no irreparable harm where plaintiff had "at least constructive, if not actual" notice of defendant's infringement years before plaintiff filed the suit*), vacated and remanded sub nom. Genband US LLC v. Metaswitch Networks Corp.*, 861 F.3d 1378, 1382, 1385 (Fed. Cir. 2017) (finding it error that the court declared that plaintiff had to prove that patented features drove demand for the product, but *rejecting* plaintiff's argument that its delay in seeking relief was irrelevant to the permanent injunction analysis); *see also Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1325 (Fed. Cir. 2012) (finding that "delay in bringing an infringement action . . . suggest[s] that the patentee is not irreparably harmed by the infringement.").

Here, even accepting Collision's version of events, Collision has had constructive notice of what it alleged was Samsung's infringement since at least April 2015, Collision's claimed date of first infringement.  *See* Tr. 760:19-23.

Collision claims that it learned of the alleged infringement only in 2023, when it says it came across a Verizon document suggesting that Samsung infringed.  *See* Tr. 369:14-370:4.  But the Verizon document indicated only that Samsung was using algorithms from release 10 or release 11 of the LTE standard.  Tr. 603:21-604:15.  And even on Collision's theory, Samsung had been making infringing LTE handsets since at least 2015.  Tr. 436:6-12.  Collision cannot seriously claim to have been surprised to learn Samsung phones complied with the LTE standard.

14

By no later than 2015, then, Collision knew or should have known that Samsung was making LTE-compliant handsets, which to Collision was enough to indicate that Samsung was infringing.  But Collision knew even more: it had known that Samsung was working on multiuser detection, Collision's technology, *see* Tr. 237:2-8, since February 2012.  Tr. 217:2-15 ("[Samsung was] talking about some attempts that they were making on multiuser detection themselves.").  But Collision did not accuse Samsung of infringing because Collision "want[ed] to partner with them. We wanted to improve their systems with our technology, *and so, we're not going to go there and say, Hey, work with us, but you're infringing.*"  Tr. 329:14-330:8 (emphasis added).

Samsung gave further indication that it was working on the same technology: its license proposal to Collision "ask[ed] Collision to acknowledge that Samsung may be developing their own competing technology to what Collision would be providing," and prevented Collision from suing Samsung for patent infringement.  Tr. 359:17-360:10.  But even after 2015, when Samsung was supposedly infringing, Collision never once accused Samsung of infringement, even as it reached out to Samsung to try and advance its business in 2016 and 2018.  *See* Tr. 382-90.

Because Samsung's public phone manufacturing in 2015 combined with its previous interactions with Collision should have put Collision on notice of the alleged infringement, Collision's failure to make a claim of patent infringement or otherwise seek relief in the years between 2015 and 2023 shows that the harm it claims is not irreparable.  Collision would not have waited nearly a decade to address truly irreparable harm.  *See Genband*, 211 F.Supp.3d at 895; *Genband*, 861 F.3d at 1382; *Apple, Inc.*, 678 F.3d at 1325.

### B.    Money Damages Are Adequate

Where plaintiffs license their patents and do not otherwise compete with the defendant, money damages can adequately compensate them for their loss such that injunctive relief is unnecessary.  *See Laserdynamics*, 2010 WL 2574059, at *2 (plaintiff's "extensive licensing history

. . . demonstrates that money damages have been and will continue to be sufficient to remedy any infringement"); *Bright Data*, 584 F.Supp.3d at 198 (plaintiff's "voluntary efforts to engage licensees indicates that it believes its injury can be fairly remedied through monetary relief").

Collision does not compete with Samsung.  *See* Tr. 357:1-18, 353:12-20, 377:3-13, 368:23-369:13.  A plaintiff like Collision that has consistently sought (and received) money for patent licenses cannot argue that money will be insufficient to remedy any infringement.  *See Laserdynamics*, 2010 WL 2574059, at *2; *Bright Data*, 584 F.Supp.3d at 198.  Moreover, "design-win" losses like what Collision claims can be fully compensated with money damages.  *See California Inst. of Tech. v. Broadcom Ltd.*, 2020 WL 10054680, at *14, 18-20 (C.D. Cal. July 17, 2020) (noting that plaintiff's expert's royalty calculations were based on a "design win" structure, and finding that plaintiff could receive damages related to design wins that occurred in the United States), *aff'd in relevant part, vacated in part, remanded*, 25 F.4th 976 (Fed. Cir. 2022).

## C.    The Balance Of Hardships Favors Samsung

Collision first again cites English history, arguing that "[u]nder traditional equity principles, any hardship to Samsung from complying with a permanent injunction is immaterial." Mot. at 18.  As explained above, that is incorrect.  *See supra* at 9.  Moreover, Collision's argument is precluded by *eBay*'s instruction that there are no automatic rules in applying the traditional equitable factors.  547 U.S. at 393-94.  Correctly applying *eBay*, courts find that imposing permanent injunctions on businesses like Samsung in patent cases poses severe hardships which justify denying injunctive relief.  *See Fractus*, 876 F.Supp.2d at 854 (finding that balance of hardships and public interest disfavored permanent injunction against Samsung where plaintiff's "requested injunction will severely hamper Samsung's cell phone business . . . significantly disrupt related third-party businesses such as Samsung's suppliers and customers. . . .[and] detrimentally affect the retail sellers of Samsung phones, as well as their customers"); *see also Laserdynamics*,

2010 WL 2574059, at *3 (balance of hardships favored defendant where "an injunction would not only interrupt [defendant's] business but also that of related businesses, including suppliers and customers of [defendant].").

Here, Samsung has close to 20,000 full-time employees in the United States alone.  Tr. 838:3-5.  Samsung "has assembly plants and sales networks in 88 countries and employs around 370,000 people."  *See Samsung Electronics*, World Economic Forum, https://www.weforum.org/organizations/samsung-electronics/ (last visited Dec. 29, 2025). Collision's broad proposed order would impose burdens on each of those employees in each of those countries.  *See Conceptus, Inc. v. Hologic, Inc.*, 2012 WL 44064, at *3 (N.D. Cal. Jan. 9, 2012) (balance of hardships weighed against permanent injunction where defendant "argue[d] that it would have to lay off nearly three hundred employees . . . if an injunction [was] imposed"). Moreover, a permanent injunction would significantly disrupt related third-party businesses like Samsung's suppliers, customers, and retail sellers.  They would be deprived of the benefit of their contracts with Samsung for the phones covered by any injunction.  And Samsung accounts for around 30% of the market for smartphones in the United States.  *See* Kif Leswing, *Samsung taking market share from Apple in U.S. as foldable phones gain momentum*, CNBC (Aug. 16, 2025, 4:50 p.m.), https://www.cnbc.com/2025/08/16/samsungs-us-market-share-apple-rivalry-foldable-phones.html.  Vaporizing that market share overnight would be an extreme hardship for Samsung and its consumers.  Collision's injunction would limit consumer choice in the smart phone market, including for consumers who just want to obtain repair parts or replacement devices under their already-existing warranties.  Wireless carriers who rely on Samsung's product catalog would be unable to meet consumer demand.  In contrast, Collision points to no hardship that it would suffer if it simply received money damages.  This factor strongly favors denying injunctive relief.

### D.    The Public Interest Does Not Favor A Permanent Injunction

Courts find that the public-interest factor favors defendants where a permanent injunction will harm customers and third parties, and plaintiff's damages are limited to their lost licensing fees. *Fractus*, 876 F.Supp.2d at 854 (public interest disfavored injunction against Samsung handsets); *see also Apple, Inc. v. Motorola, Inc.*, 869 F.Supp.2d 901, 921 (N.D. Ill. 2012), *rev'd on other grounds*, 757 F.3d 1286 (Fed. Cir. 2014) (refusing to grant injunctive relief against phones where court considered "the harm that an injunction might cause to consumers who can no longer buy preferred products because their sales have been enjoined"); *Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 492 F.Supp.3d 495, 60 (E.D. Va. 2020), *rev'd on other grounds*, 38 F.4th 1025 (Fed. Cir. 2022) (denying permanent injunction in part based on widespread use and importance of Cisco connectivity technology); *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Organisation*, 2019 WL 8108116, at *20 (E.D. Va. Dec. 23, 2019), *rev'd on other grounds*, 28 F.4th 1247 (Fed. Cir. 2022) (finding that the public interest would be disserved by an injunction preventing the full market need being met); *Johnson & Johnson Vision Care, Inc., v. CIBA Vision Corp.*, 712 F.Supp.2d 1285, 1290-92 (M.D. Fla. 2010) (finding public interest disfavored injunction where 5.5 million used defendant's contact lenses, and enjoining their sales would have caused "practical and economic issues" for those users).  Courts also find the public-interest factor favors defendants where a permanent injunction would "eliminate[] an important alternative" in the market for consumers. *See Conceptus*, 2012 WL 44064, at *3; *Westinghouse Air Brake Techs. Corp. v. Siemens Indus., Inc.*, 2018 WL 3655782, at *1 (D. Del. Aug. 2, 2018) (denying preliminary injunction based on public interest where "status quo" was "a two-player market" and consumers faced risks from relying on a sole supplier).

And courts reject the argument that the mere desire to enforce the right to exclude others from use of patents is a significant enough public interest to justify a permanent injunction.  *See*

*ActiveVideo Networks*, 694 F.3d at 1341 ("Although enforcing the right to exclude serves the public interest, the public interest factor requires consideration of other aspects of the public interest"); *Laserdynamics*, 2010 WL 2574059, at *3 ("Although it is generally in the public interest to uphold patent rights, [plaintiff] has failed to show that the public interest would be better served through an injunction [in] this case."); *Fractus*, 876 F.Supp.2d at 854 ("Though the public has a keen interest in maintaining a strong patent system, [plaintiff] has not identified a specific public interest that would be served by entry of its requested injunction.").

Here, Collision's proposed permanent injunction would impose significant burdens on Samsung's customers, employees, and suppliers: Hundreds of thousands, if not millions of people—not to mention the millions of customers Samsung has for its smart phones in the United States. An injunction would drive up the price of smart phones, limit consumer choice, prevent necessary repairs, and prevent wireless carriers from meeting consumer demand. *See supra* at 16-17.

Moreover, smart phones are a near-essential good in the United States: Samsung users can browse the internet, get driving directions, communicate with family, including children and the elderly, seek medical advice and help, and report and respond to emergencies or natural disasters. And Samsung accounts for fully *thirty percent* of the market share for smart phones in the United States. It also accounts for approximately *fifty-eight* percent of the non-iOS smart phone market in the United States, making Samsung an essential alternative for Android users. *See* Kif Leswing, *Samsung taking market share from Apple in U.S. as foldable phones gain momentum*, CNBC (Aug. 16, 2025, 4:50 p.m.), https://www.cnbc.com/2025/08/16/samsungs-us-market-share-apple-rivalry-foldable-phones.html (noting Samsung's thirty percent and Apple's forty-nine percent market share); *United States v. Apple, Inc.*, 2:24-cv-04055 (D.N.J. Mar. 21, 2024), Dkt. No. 1 ("The only other significant mobile operating system in the United States [besides Apple] is

Google's Android, which works with smartphones manufactured by Samsung . . . ."). An injunction would create a supply shock in a near-essential product that would drastically increase prices and reduce the quality and variety of smartphones available to U.S. consumers. Collision does not argue that, absent Samsung phones, the market can meet the current demand.

Such an injunction would cause severe practical and economic issues for would-be users and thus does not serve the public interest. *See Johnson & Johnson Vision Care*, 712 F.Supp.2d at 1290-92; *Fractus*, 876 F.Supp.2d at 854; *BASF Plant Sci., LP*, 2019 WL 8108116, at \*20; *Conceptus*, 2012 WL 44064, at \*3; *Westinghouse Air Brake Techs.*, 2018 WL 3655782, at \*1; *Centripetal Networks, Inc. v. Cisco Sys.*, 492 F.Supp.3d at 605. Removing thirty percent of the market for smart phones in the United States would plainly harm the public interest. The public-interest factor alone would be sufficient to deny the relief Collision seeks.

All Collision can offer in response is that the public interest favors protecting the right to exclude. But that interest is already protected by jury damages verdicts. Where a permanent injunction would harm businesses and deprive the public of useful products, and Collision can point to no specific public interest that would be served, the public interest does not favor injunctive relief. It is natural that Collision cannot point to a real public interest in a permanent injunction: it is a patent licensor whose interests can easily be protected with money damages. This factor too strongly disfavors an injunction.

## III.    CONCLUSION

Collision's Motion for Permanent Injunction should be denied.

20

Dated:  January 7, 2026   Respectfully submitted,

*/s/ Melissa R. Smith*
Victoria F. Maroulis
California Bar No. 202603 (admitted in E.D. Tex.)
victoriamaroulis@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel : 650-801-5000
Fax: 650-801-5100s

Sean Pak
California Bar No. 219032 (admitted *pro hac vice*)
seanpak@quinnemanuel.com
Brian E. Mack
California Bar No. 275086 (admitted in E.D. Tex.)
brianmack@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700

Kevin Hardy
D.C. Bar No. 473941 (admitted in E.D. Tex.)
kevinhardy@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
555 13th Street, N.W., Suite 600
Washington, DC 20004
Tel: 202.538.8000
Fax: 202.538.8100

Melissa R. Smith
Texas State Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Phone: (903) 934-8450
Fax: (903) 934-9257
*Counsel for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on January 7, 2026, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

Dated:  January 7, 2026                          */s/ Melissa R. Smith*
                                                  Melissa R. Smith