**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| COLLISION COMMUNICATIONS, INC., | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § | CIVIL ACTION NO. 2:23-CV-00587-JRG |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., | § § § § | |
| *Defendants.* | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion for Permanent Injunction (the "Motion") filed by Plaintiff Collision Communications, Inc. ("Collision"). (Dkt. No. 346.) Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. ("Samsung") oppose. (Dkt. No. 357.) The United States, through the Department of Justice ("DOJ") Antitrust Division and the United States Patent and Trademark Office ("USPTO") filed a Statement of Interest of the United States of America (the "Statement of Interest"). (Dkt. No. 386.) The Court held a hearing regarding the Motion on May 11, 2026. (Dkt. No. 397.)

## I.    BACKGROUND

Collision filed the above-captioned suit against Samsung on December 12, 2023, alleging infringement of six U.S. patents. (Dkt. No. 1.) The case proceeded to trial on October 3, 2025 (Dkt. No. 307), with Collision asserting at trial infringement of four U.S. patents. (Dkt. No. 273.) On October 10, 2026, the jury returned its verdict. (Dkt. No. 313.) The jury found infringement of all asserted claims and that none of the asserted claims were invalid. (*Id*. at 4-6.) The jury further found that Samsung's infringement was willful. (*Id*. at 9.) The jury awarded damages in the form

of a reasonable royalty in the amount of $445,494,160.00, such reasonable royalty structured as a running royalty and not a lump sum. (*Id*. at 8.) The Court entered its Final Judgment based on the verdict on November 12, 2025. (Dkt. No. 331.)

Collision filed the instant Motion on December 10, 2025, seeking to permanently enjoin Samsung from further infringement of one of the four patents-in-suit—U.S. Patent No. 7,593,492 (the "'492 patent"). (Dkt. No. 346.) The Motion is now fully briefed, including both Collision and Samsung's responses to the DOJ and USPTO's Statement of Interest. (*See* Dkt. Nos. 357, 370, 379, 386, 387, 388-1.) At the hearing on the Motion, Collision indicated that it is seeking injunctive relief only as to the '492 patent because the remaining terms of the other three patents-in-suit were negligible. (Dkt. No. 397 at 5.)

## II.      LEGAL AUTHORITY

Congress has authorized district courts to issue injunctions "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. The Supreme Court provided guidance in 2006 that the same generally applicable four-factor test for permanent injunctive relief must also be applied in patent cases. *See eBay Inc. v. MercExchange, L.C.C.*, 547 U.S. 388, 391 (2006). Accordingly, "a plaintiff seeking a permanent injunction… must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id*.

Prior to *eBay*, the Federal Circuit "followed the general rule that a permanent injunction will issue once infringement and validity have been adjudged, absent a sound reason to deny such

relief." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011) (citing *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1247 (Fed. Cir. 1989)).

Meanwhile, the district court which initially took up the *eBay* case applied categorical rules in the opposite direction, such as that "the evidence of the plaintiff's willingness to license its patents, its lack of commercial activity in practicing the patents, and its comments to the media as to its intent with respect to enforcement of its patent rights, are sufficient to rebut the presumption that it will suffer irreparable harm if an injunction does not issue." *MercExchange L.L.C. v. eBay, Inc.*, 275 F. Supp. 2d 695, 712 (E.D. Va. Aug. 6, 2003).

The Supreme Court expressly rejected both approaches in *eBay*, stating that "traditional equitable principles do not permit such broad classifications," and that "[n]either the District Court nor the Court of Appeals below fairly applied [] traditional equitable principles in deciding [the] motion for a permanent injunction." 547 U.S. at 393. "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and [] such discretion must be exercised consistent with traditional principles of equity." *Id*. at 394.

While nothing in *eBay* closed the door on permanent injunctions as an avenue for relief in patent cases, in the 20 years since *eBay* monetary damages have become the presumptive remedy in practice. This shift has been aided by the Federal Circuit's determination that "awarding an ongoing royalty for patent infringement in lieu of an injunction may be appropriate." *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007). In *Paice*, the Federal Circuit established that "where the district court determines that a permanent injunction is not warranted…[and] the parties fail to come to any agreement [regarding a license], the district court could step in to assess a reasonable royalty in light of the ongoing infringement." *Id*. Such ongoing royalty has often been structured with an elevated or enhanced rate per unit in light of the knowing

3

nature of the continuing infringement. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016) (citing 35 U.S.C.A. § 284).

### III.   ANALYSIS

Collision asserts that injunctive relief was granted as "ordinary relief" in the English Courts of Chancery in 1789, and that "[u]nderstanding [the] factors according to how they were understood in 1789 confirms that the four-factor equitable test will typically warrant a permanent injunction in patent infringement cases." (Dkt. No. 346 at 4, 6.) Samsung responds that such constitutes the "same argument for presumptive permanent injunctions" that *eBay* rejected. (Dkt. No. 357 at 3, 5.) The Court holds that there is **no** presumptive remedy in patent cases. Either a plaintiff seeks an injunction and shows that it meets the *eBay* test, or if not, money damages apply. In this context, the Court takes up each of the *eBay* factors as they apply in this case.

### A.  Irreparable Harm

Collision makes two distinct arguments as to why the Court should find it has suffered irreparable harm. It asserts both that this Court should find that ongoing patent infringement is irreparable harm as a matter of law, and that there are additional harms it has suffered which demonstrate irreparable harm "[u]nder any approach." The Court now looks to each of these arguments, and addresses a broad assertion raised by Samsung regarding non-practicing entities.

### i.      Irreparable Harm as a Matter of Law

Collision asserts that "it is a traditional principle of equity that ongoing patent infringement is irreparable harm," (Dkt. No. 346 at 6 (citing *Horton v. Maltby*, LT Misc MS 112, p. 10 (Ch. 1783)), and that "requiring a plaintiff to show something more than ongoing infringement to establish irreparable harm would be an ahistorical approach to equity" (Dkt. No. 346 at 13). It states that this Court can and should determine that "certain categories of torts," including patent

infringement, "are irreparable harm as a matter of law," and that "nothing in *eBay* prohibits courts from" reaching this conclusion. (*Id*. at 10.) It argues that the Federal Circuit's opinion in *VidStream LLC v. Twitter, Inc.*—holding that a categorical rule that ongoing infringement is sufficient to establish irreparable harm is impermissible under *eBay*—should not be persuasive to this Court since it was decided before *Trump v. CASA*, "when it was perhaps less clear that the historical approach to federal equity is the governing approach." (*Id*. at 14, citing *VidStream LLC v. Twitter, Inc.*, 2024 WL 4820802, at *1 (Fed. Cir. 2024).)

In response to the argument that Collision should be entitled to a finding of irreparable harm as a matter of law, Samsung responds that "*eBay* and its progeny [] stand for the proposition that the Federal Circuit's prior presumption of irreparable harm in patent cases is ***inconsistent with*** traditional principles of equity." (Dkt. No. 357 at 5 (emphasis in original).) Samsung asserts that Collision's reading of *Trump v. CASA*, as overturning Federal Circuit opinions applying *eBay* such as *VidStream*, is "an extreme misreading of *CASA*," which considered circumstances far removed from the permanent injunction factors in a patent case. (Dkt. No. 357 at 4.) Samsung further argues that Collision's own evidence from British practice does not support its conclusion that ongoing patent infringement was automatically deemed irreparable harm at the final-injunction stage of litigation. (*Id*. at 7.)

The DOJ and USPTO respond to this argument from Collision as well. In the Statement of Interest, the United States urges that Collision's position that ongoing infringement is irreparable harm as a matter of law under 18th-century principles of equity is "inconsistent with *eBay*, and the United States does not argue for such a standard." (Dkt. No. 386 at 6 n.1.)

The Court finds that this proposed categorical rule, that ongoing infringement constitutes irreparable harm as a matter of law, is inconsistent with *eBay*. The Federal Circuit has rejected the

notion that any presumption of irreparable harm governs this inquiry. *See Robert Bosch*, 659 F.3d at 1149 ("*eBay* jettisoned the presumption of irreparable harm as it applies to determining the appropriateness of injunctive relief"); *see also VidStream*, 2024 WL 4820802, at \*1 ("VidStream's argument [that the district court had no discretion to require additional harm beyond ongoing infringement VidStream established] clearly runs afoul of the Supreme Court's decision in [*eBay*], which rejected such a 'broad' and 'categorical rule' in deciding motions for injunctive relief in the context of patent infringement").

As the Federal Circuit has held, "a successful patent infringement plaintiff can no longer rely on presumptions or other short-cuts to support a request for a permanent injunction." *Robert Bosch*, 659 F.3d at 1149. The Court declines Collision's invitation to find that *Trump v. CASA*, in stating that "a judge's oath to follow the law" requires "[o]bserving… the boundaries of the Judiciary Act of 1789," 606 U.S. at 858, has overturned the Federal Circuit in directly addressing the question at hand. Indeed, it would be difficult to say this Court has followed *eBay* if it were to adopt the categorical rule urged by Collision, that evidence of ongoing infringement automatically establishes irreparable harm.

As Chief Justice Roberts' concurrence in *eBay* sets out, the "difficulty of protecting a right to *exclude* through monetary remedies that allow an infringer to *use* an invention against the patentee's wishes… often implicates the first two factors of the traditional test." 547 U.S. at 395 (Roberts, J., concurring). However, he goes on to state that "[t]his historical practice… does not *entitle* a patentee to a permanent injunction or justify a *general rule* that such injunctions should issue." *Id*. Collision's arguments for a finding of irreparable harm as a matter of law run afoul of this guidance. This Court declines to find that, in light of Samsung's ongoing infringement, Collision is automatically entitled to a finding of irreparable harm.

6

### ii.    Irreparable Harm to Non-Practicing Entities

Samsung's first response to Collision's arguments on irreparable harm is that Collision's loss is not irreparable harm where Collision "never used its patents to sell products that would compete with Samsung's products in the same markets," and that Collision can therefore be adequately compensated via the reasonable royalty it sought. (Dkt. No. 357 at 11, citing *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1338 (Fed. Cir. 2012).) While Samsung does not say so outright, this argument verges on an assertion that a non-practicing entity cannot establish irreparable harm.[1]

It is true, as Samsung asserts, that "the Federal Circuit and courts in this District have [] held that non-practicing patent owners who license their patents but do not manufacture products rarely suffer irreparable harm from patent infringement." (Dkt. No. 357 at 12, first citing *Nichia Corp. v. Everlight Americas, Inc.*, 855 F.3d 1328, 1344 (Fed. Cir. 2017); then citing *ActiveVideo Networks*, 694 F.3d at 1338; then citing *Laserdynamics, Inc. v. Quanta Computer, Inc.*, 2010 WL 2574059, at *2 (E.D. Tex. June 22, 2010); and then citing *Fractus, S.A. v. Samsung Elecs. Co.*, 876 F.Supp.2d 802, 854 (E.D. Tex. 2012).) However, this Court rejects the position that a non-practicing entity can *never* establish irreparable harm. As the Supreme Court clearly acknowledged in *eBay*, a plaintiff's "'lack of commercial activity in practicing the patents'" cannot, alone, prevent a plaintiff from receiving an injunction because "traditional equitable principles do not permit such broad classifications." 547 U.S. at 393. Samsung's posture all but invites the Court to go down the path of another impermissible bright-line rule. The Court declines such invitation.

Further, a party's status as non-practicing entity can be a transient one. Any currently non-

---

[1] While Samsung admitted, in its oral argument, that a non-practicing entity could suffer irreparable harm in certain (unexplained) circumstances (*see, e.g.*, Dkt. No. 397 at 82-83), the differences between their briefing and their argument persuade the Court of a need to address this matter.

practicing entity may have once practiced its patents, and may choose to do so again (or for the first time) in the future. The entity may pursue patent assertion as a means of raising the capital needed to convert its operations (or return to its operation) to practicing its patents. To be clear, there are not "two classes" of patents. A non-practicing entity holds patents with the same rights as that of any practicing patent owner. The identity of the patent holder does not impact the rights conferred by the patent granted.

The Supreme Court has long recognized that the rights of a patent holder are equivalent to the rights an owner holds in any other form of property when it comes to the owner's right to use, **or not use**, the property as they see fit. *See, e.g., Cont'l Paper Bag Co. v. E. Paper Bag Co.*, 210 U.S. 405, 429 (1908) ("[I]t is the privilege of any owner of property to use or not use it, without question of motive"). To differentiate between patent owners based on (non)use would be to create a lower second class of patent ownership, implying different and lesser rights. This distinction is not supported by the text of any statute, any decision of the Supreme Court, or any practice by the USPTO. The USPTO does not issue patents with a gold seal if the holder practices the patents, but issues patents with only a silver seal when they do not.

Indeed, the USPTO urges in the Statement of Interest that a non-practicing patentee can demonstrate irreparable harm under certain circumstances. (Dkt. No. 386 at 7.) In particular, the Statement of Interest puts forth that irreparable harm can be demonstrated by a non-practicing entity given that (1) patents can be difficult to value and (2) damages can be difficult to calculate. (*Id*. at 8-10.) The USPTO is correct in this regard.

### iii.    Additional Bases for Irreparable Harm

Collision further asserts it has suffered irreparable harm because it has "been denied veto-power control of its patented technology," and because Samsung's infringement caused

competitive injury in the "design-win" competition it was engaged in with Samsung's in-house team, and thus "deprived Collision of the competitive benefits that come from a design win—the lock-in effect, the incumbency effect, and goodwill as the winning supplier." (Dkt. No. 346 at 15-18.) At the hearing, Collision clarified that it was "trying to… enter different technology companies' technology stacks. They want their designs to be incorporated into whoever they're talking to's product. In this case, it is Samsung." (Dkt. No. 397 at 27.) Collision asserts that it lost out on this "great validation for Collision" because of Samsung's infringement. (*Id.*)

Further, the Court properly considers ongoing infringement as a part of the irreparable harm analysis, despite its finding that such ongoing infringement does not *automatically* entitle Collision to a finding of irreparable harm as a matter of law.

Responding more directly to Collision's additional bases for irreparable harm, Samsung asserts that Collision's arguments about "design-win" competition are flawed. Samsung argues this point fails both because of Jared Fry's trial testimony, which attributed Collision's business struggles to *Nokia* (not Samsung) losing interest in collaborating with Collision, and because an injunction is forward-looking relief which requires a plaintiff to show they will be harmed in the *future*. (Dkt. No. 357 at 12, citing *Murthy v. Missouri*, 603 U.S. 43, 58 (2024).) Samsung additionally argues that the Federal Circuit's holdings regarding irreparable harm in design win competitions relate to situations where the plaintiff competed with the defendant in the same market for goods using the patent, which is inapplicable since Collision does not compete with Samsung. (Dkt. No. 357 at 13.) Samsung finally asserts that Collision's delay in filing suit, where (according to Samsung) Collision had constructive notice of the infringement by 2015 and did not seek relief until 2023, "shows that the harm it claims is not irreparable." (*Id.* at 14-15.)

The Court finds that Collision's loss of the design-win competition, taken alongside

Samsung's ongoing infringement, is sufficient to establish irreparable harm in this case. The Court considers the totality of the circumstances in reaching its conclusion. The Court also notes the struggle incumbent on any patent holder in protecting the right to exclude and the reality that Samsung continues to use the '492 patent against Collision's wishes. *See eBay*, 547 U.S. at 395 (acknowledging "the difficulty of protecting a right to *exclude* through monetary remedies that allow an infringer to *use* an invention against the patentee's wishes") (Roberts, J., concurring) (emphasis in original).

Accordingly, the Court finds that Collision has established that it has suffered irreparable harm in this case as required for injunctive relief to issue under *eBay*.

### B. Adequacy of Monetary Damages

Collision urges the same arguments (as for irreparable harm) to assert that monetary damages are inadequate to compensate for its injury in this case. Collision again posits that "traditional 18th-century equity practice makes clear that… remedies at law are inadequate to address patent infringement." (Dkt. No. 346 at 15.) Collision further asserts that the denial of veto-power control of its patented technology, and the competitive injury it has suffered from Samsung's infringement, also cannot be remedied by monetary damages. (*Id*. at 15-16.)

The United States similarly urges the same points as it highlighted for irreparable harm, that monetary damages may be inadequate due to the unique challenges which accompany valuing patents and determining monetary damages for infringement. (Dkt. No. 386 at 8-10.)

In response to Collision's arguments about traditional equity practice, Samsung argues that such cases are inapplicable given that "[p]atent practice is different today"—namely, the Federal Circuit now permits both an ongoing royalty for patent infringement in lieu of an injunction, and damages that reflect future use of the patent by the defendant. (Dkt. No. 357 at 8, first citing *Paice.*,

504 F.3d at 1314; and then citing *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1565 (Fed. Cir. 1985).) Accordingly, "[a]lthough money damages for future injury were non-existent, and thus inadequate, at Chancery, they exist and are adequate today. So Chancery's presumption of inadequacy does not apply." (Dkt. No. 357 at 8.) Samsung further asserts that "[a] plaintiff like Collision that has consistently sought (and received) money for patent licenses cannot argue that money will be insufficient to remedy any infringement," and that monetary damages are sufficient to remedy Collision's claims of design-win losses as well. (*Id.* at 16.) This argument, however, presupposes that if money damages have been adequate in the past, they will be again in the present case. This argument is unavailing.

The Court declines to find that patent infringement cannot ever be remedied by monetary damages alone, particularly in light of the fact that the Federal Circuit has since determined the Patent Act provides courts the power to award prospective monetary relief. *See Paice*, 504 F.3d at 1314. Similarly, the Court declines to follow Samsung's suggested rule that *any* plaintiff which licenses its patents and does not compete with the defendant is categorically unable to show an inadequacy of monetary damages. *See, e.g., eBay*, 547 U.S. at 393 ("[T]raditional equitable principles do not permit such broad classifications," as "a 'plaintiff's willingness to license its patents' … would be sufficient to establish that the patent holder would not suffer irreparable harm if the injunction did not issue"). Additionally, a plaintiff's ability to seek enhanced monetary damages, as provided for in Section 284 of the Patent Act, in and of itself does not mean the same plaintiff would not be entitled to injunctive relief.

The Court is aware that Collision brought this action seeking money damages as a remedy for past harms. Its First Amended Complaint seeks injunctive relief, as well, and presumptively, for future damages. (*See* Dkt. No. 76.) Collision also sought the potential enhancement of those

11

damages through their evidence of willfulness. Nothing in Collision's pleadings rises to the level of an admission that money damages are adequate in this case. As with the first *eBay* factor, this Court pays close heed to Chief Justice Roberts when he notes the difficulty of protecting the right to exclude with money damages only. *eBay*, 547 at 395. The Chief Justice also cites with approval the advice of Justice Holmes about understanding and properly applying these equitable standards by noting, "'a page of history is worth a volume of logic.'" *Id*. (quoting *New York Tr. Co. v. Eisner*, 256 U.S. 345, 349 (1921) (opinion for the Court by Holmes, J.)). While the Court also acknowledges the warning in Justice Kennedy's *eBay* concurrence that new forms of commerce and business practices might not always square with the *volume of logic* Justice Holmes referenced, the historical underpinnings of the injunction as an equitable remedy in patent cases must not be ignored or swept away. Considering the totality of the record, the briefing, and the oral arguments, the Court concludes that Collision has demonstrated it meets this factor.

### C.  Balance of Hardships

Collision asserts that any hardship to Samsung from complying with a permanent injunction is immaterial under traditional principles of equity. (Dkt. No. 346 at 18 (citing *Liardet v. Johnson* (Ch. 1780) ("[As to the argument] that it will be a hardship to tie the Defendant up for ever from making this [infringing product,]… if the Plaintiffs have established their Right at Law, they are intitled to tie him up")).) Collision further asserts that their proposed injunction is "narrowly tailored to the specific technology found to infringe the '492 patent," and that the one-month grace period Collision proposes the injunction include would "give[] Samsung ample time to bring its infringement to an end." (Dkt. No. 346 at 18.) However, tailoring Collision's proposed injunction to the '492 patent is no concession when enforcement of only the '492 patent is what the Motion seeks.

Samsung responds that Collision has presented two historical cases, which reach opposite conclusions on whether a defendant's hardship is material, and that "[s]uch limiting and conflicting Founding-era authority does not provide any basis to depart from the mandatory traditional rule that the defendant's hardship is considered in granting permanent injunctions—much less a basis to ignore Supreme Court precedent" requiring the consideration of a balance of the hardships. (Dkt. No. 357 at 9, citing *eBay*, 547 U.S. at 391.) Samsung then asserts that imposing a permanent injunction in this case would pose severe hardships to thousands of its employees, both in the United States and abroad, that an injunction would "significantly disrupt related third-party businesses like Samsung's suppliers, customers, and retail sellers" by "depriv[ing them] of the benefit of their contracts with Samsung," and that customers would suffer from the limitation on consumer choice in the phone market an injunction would create. (Dkt. No. 357 at 17.)

However, the Court notes that Samsung's arguments on this factor clearly conflate a balance of the hardships between the parties with the public interest factor. Samsung's assertions that customers and third parties would suffer if an injunction were to be imposed are properly considered by the Court as part of the public interest factor. They have no bearing on balancing the hardships *Collision and Samsung* will face if an injunction were to be imposed.

Regarding Samsung's employee arguments, Samsung seems to suggest that the mere scale of its operations means the Court should not issue an injunction against it. Samsung asserts that it "has close to 20,000 full-time employees in the United States alone, … [and] 'assembly plants and sales networks in 88 countries and employes around 370,000 people.'" (Dkt. No. 357 at 17 (internal citation omitted).) The only argument Samsung makes for hardship *it* will face (as opposed to hardship its customers and third-parties will face), is the conclusory statement that "Collision's broad proposed order would ***impose burdens*** on each of those employees in each of

those countries." (*Id.* (emphasis added).) However, Samsung's employees are not Samsung the corporate entity. The Court also finds these arguments unpersuasive, given both the lack of specificity Samsung has provided as well as the fact that they do not apply to Samsung as an *entity*.

The Federal Circuit has expressly held, regarding this factor, that "[a] party cannot escape an injunction simply because it is smaller than the patentee or because its primary product is an infringing one." *Robert Bosch*, 659 F.3d at 1156. It stands to reason that the reverse is true as well. Samsung cannot avoid *ever* being enjoined because of its status as a global commercial enterprise. It points to no authority stating that the size of a company can or should be a material factor. For global companies like Samsung, there is no protective shield of being "too big to be enjoined," any more than there is a statutory shield of being "too big to fail" in the global financial sector. As the Federal Circuit's analysis in *Robert Bosch* demonstrates, the hardship each party alleges, and the appropriate balance to be struck between them, is to be assessed in the context of that party's circumstances and relationship to the harm stemming from either the granting or denial of an injunction.

However, Collision's briefing on this point is similarly deficient. Collision makes the conclusory argument that Samsung will not suffer any hardship. In its oral argument, Collision acts as though its bearing the brunt of the hardships is *a fait accompli*. (*See* Dkt. No. 379.) It then makes no effort to identify any particular or specific hardship it would face if an injunction were not to issue. (*See* Dkt. No. 346 at 18.)

Given the Supreme Court expressly instructs in *eBay* for courts to "consider[] the balance of hardships between plaintiff and defendant," 547 U.S. at 391, the Court declines Collision's invitation to adopt another categorical rule—that harm to an infringing defendant is immaterial in the permanent injunction analysis—which would essentially remove this factor from the Court's

14

consideration.

At the hearing on the Motion, Collision urged that "the hardship factor is largely going to be satisfied by having an injunction that is narrowly tailored to the infringement," and that Collision believes "Samsung could comply with this injunction." (Dkt. No. 397 at 23, 43.) Samsung rightly emphasized that Collision bears the burden on this factor. (*Id*. at 69.) It then argued such burden has not been met by Collision. (*Id*.)

The Court finds that both sides have made a rather poor showing on this issue. The lack of mutual specifics leave the Court little to go on. While Collision argues its proposed injunction is narrow and tailored, it must still meet its burden to show the balance of hardships between the parties falls on it. Ultimately, the burden is on the *plaintiff* to show that a remedy in equity is warranted considering the balance of the parties' hardships. *See eBay*, 547 U.S. at 391. Accordingly, the Court finds that Collision has not met its burden of establishing that the balance of the hardships favors injunctive relief, in light of its failure to identify any particular hardship it would face if the injunction were to be denied, and its bare assertions that Samsung would have no issue complying with the proposed "tailored" injunction. The hardships each would bear must be identified clearly and then compared fairly. Collision makes an argument that this factor can be "largely satisfied" by considering only the breadth and scope of the injunction it has proposed— but again, there is no presumption that Collision is entitled to relief or can automatically meet this factor through any showing other than a showing of the relative hardships between the parties.[2]

---

[2] In addition, Collision has made inconsistent arguments from trial to now in how necessary this technology is to Samsung and whether there are any alternatives. Samsung represented at the hearing that to date it has not successfully identified noninfringing alternatives to using this technology (where Collision argued at trial, to support its damages figure, that there are not adequate noninfringing alternatives in the market). (Dkt. No. 397 at 75-78.) It is insufficient for Collision to now make the bare assertion that the injunction is "narrowly tailored… and so imposes no cognizable harm on Samsung," as it "does not require Samsung to develop new single-user MIMO algorithms; rather, it would only require Samsung to limit its existing single user MIMO algorithms to a non-infringing subset." (Dkt. No. 346 at 18.) Collision cannot assert at trial that there are no noninfringing alternatives, and now succeed based on the conclusory suggestion that Samsung can easily operate around the injunction.

15

Collision has fallen short on this factor.

### D. Public Interest

Collision asserts that an injunction against Samsung would serve the public interest, as it would "correct th[e] dynamic" of "perpetual litigation [being] more attractive than licensing to accused infringers when the accumulated unpaid licensing fees cost more than litigation." (Dkt. No. 346 at 19.) In support of this position, Collision relies primarily on a pre-*eBay* district court decision which states that "[t]he actual market beats judicial attempts to mimic the market every time, making injunctions the normal and preferred remedy." (*Id*., citing *In re Mahurkar Double Lumen Hemodialysis Catheter Pat. Litig.*, 831 F. Supp. 1354, 1397 (N.D. Ill. 1993) (Easterbrook, J.).)

Samsung responds that the public interest factor tilts in its favor here, as a permanent injunction will harm its employees as well as customers and third parties. (Dkt. No. 357 at 18.) Samsung asserts that "[a]n injunction would drive up the price of smart phones, limit consumer choice, prevent necessary repairs, and prevent wireless carriers from meeting consumer demand." (*Id*. at 19.) Samsung argues that because it accounts for 30% of the market share for smart phones in the United States (and is approximately 58% of the domestic non-iOS smart phone market), an injunction would create "severe practical and economic issues for would-be users and thus does not serve the public interest." (*Id*. at 20.) Samsung further states an injunction would "impose burdens" on each of its employees "in each of th[e] [88] countries" where Samsung has assembly plants and sales networks. (*Id*. at 17.) Samsung again seems to imply, "We are too big to be enjoined."

On the other hand, Collision again seems to urge a categorical rule that the public interest will *always* favor an injunction, since an injunction can be used as a tool by the Court to correct the behavior of parties who may prefer litigation to licensing where unpaid licensing fees might

16

cost more than the litigation.[3] Similarly, Samsung returns to its earlier argument that it is a global corporation such that an injunction against it will always harm the public unduly. Unfortunately, neither party addresses the steps either could take to mitigate possible public harm. However, the "touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a ***workable balance*** between protecting the patentee's rights and protecting the public from the injunction's adverse effects." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 863 (Fed. Cir. 2010) (emphasis added). Let this Court be clear, neither party is entitled to the categorical rule they each seek.

It is generally in the public interest to uphold and protect patent rights, but the burden nevertheless remains on a plaintiff "to show that the public interest would be better served though an injunction under the circumstances of ***this*** case." *Laserdynamics*, 2010 WL 2574059, at \*3 (emphasis added). The burden is clearly on Collision to demonstrate "that that the public interest would not be *disserved* by a permanent injunction." *eBay*, 547 U.S. at 391 (emphasis added). Collision stating that its own proposed injunction is narrow and tailored, alone, is not sufficient.

At the hearing, Collision pointed to the power of an injunction to "correct" the fact that "Samsung assum[ed] it ha[d] the right to take [Collision's] technology… [by] forc[ing] Samsung to confront the reality of having to live without someone else's technology." (Dkt. No. 397 at 30.)

---

[3] Taking this argument together with Collision's previous assertions regarding irreparable harm and monetary damages being established as a matter of law, and the argument that harm to Samsung is immaterial in this analysis, Collision signals itself to be seeking a return to the Federal Circuit's pre-*eBay* practice of near-automatic injunctions once infringement is found. In particular, earlier in its brief Collision asserts that "injunctive relief should be ordinary relief in patent-infringement cases in U.S. federal courts today. 'Ordinary' does not mean automatic. Injunctions could still be denied for public interest reasons." (Dkt. No. 346 at 5.) It seems to be Collision's position that the public interest factor is the only area where courts should do in-depth analysis—yet in its public interest section, Collision argues that private licensing negotiations between the parties (which an injunction would force) are "[an] outcome [that is] superior **in every case**." (*Id*. at 19 (emphasis added).) While the Court has already declined to adopt Collision's position that ongoing infringement constitutes irreparable harm as a matter of law, it is worth noting the line Collision wrongly attempts to draw in the sand that the public interest consideration is the only factor that could potentially limit an injunction in a case of ongoing infringement, and yet the public interest factor will (per Collision) also always favor injunctive relief. Collision's briefing seems to say, "Heads I win, tales you lose."

Similar to its analysis on the balance of the hardships factor, the Court finds that Collision cannot point to a general idea that the enforcement of patent rights is usually in the public interest to meet its burden on this factor. Collision has made no showing that in *this* case, on *these particular facts*, the importance of upholding the patent system and encouraging future parties to negotiate with patent holders rather than to strategically infringe meets its burden to show that the public interest will not be disserved by an injunction. The Court does not find that Collision has met its burden on this factor.

## IV.    CONCLUSION

For the reasons stated herein, the Court finds that Collision has not met each of the four factors required to establish it is entitled to injunctive relief under *eBay* in this case. Accordingly, the Court finds that Collision's Motion for Permanent Injunction should be and hereby is **DENIED**.

**So Ordered this**

**May 17, 2026**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE